CURTIS WILSON TAYLOR v. VOLVO NORTH AMERICA CORPORATION

No. 410PA92

(Filed 30 December 1994)

1. **Automobiles and Other Vehicles § 253 (NCI4th)— New Motor Vehicles Warranties Act—prerequisites for recovery of refund**

In order to recover a refund under the New Motor Vehicles Warranties Act, a lessee or purchaser must establish (1) the terms of the manufacturer's express warranty, (2) that the vehicle failed to conform to those terms in the warranty, and (3) that after a reasonable number of attempts to remedy that breach of the warranty, (4) the vehicle still failed to conform.

**Am Jur 2d, Automobiles and Highway Traffic §§ 721 et seq.**

**Validity, construction, and effect of state motor vehicle warranty legislation (lemon law). 51 ALR4th 872.**

2. **Automobiles and Other Vehicles § 253 (NCI4th)— lease of new motor vehicle—clicking sound and vibration—express warranty against defects**

Plaintiff produced sufficient evidence that a new vehicle leased by plaintiff was expressly warranted against defects which would cause a clicking sound in a wheel or the front end to vibrate, although the written warranty was not introduced into evidence, where plaintiff presented the testimony of defendant's regional sales manager, who was defendant's former parts and service manager and was found by the trial court to be an expert on defendant's warranty; the manager testified as to the general terms of defendant's express warranty; and the manager also testified that a clicking noise in the wheel or brake was covered by the warranty if it was caused by a "defect," and that a vibration or

shimmy in the front end was covered by the warranty unless it was cause by the tires, a wheel imbalance, or a problem of that nature.

**Am Jur 2d, Automobiles and Highway Traffic §§ 721 et seq.**

**Validity, construction, and effect of state motor vehicle warranty legislation (lemon law). 51 ALR4th 872.**

3. **Automobiles and Other Vehicles § 254 (NCI4th)— New Motor Vehicles Warranties Act—showing of specific mechanical defect not required**

There is no statutory requirement that the buyer or lessee in all cases prove the cause of a nonconformity with the manufacturer's express warranty or identify a specific mechanical defect related to the nonconformity in order to recover under the New Motor Vehicles Warranties Act.

**Am Jur 2d, Automobiles and Highway Traffic §§ 721 et seq.**

**Validity, construction, and effect of state motor vehicle warranty legislation (lemon law). 51 ALR4th 872.**

4. **Automobiles and Other Vehicles § 254 (NCI4th)— new vehicle—failure to conform to warranty—sufficiency of evidence**

Plaintiff presented sufficient evidence that a continuing and uncorrected clicking sound in a wheel and a vibration in the front end of a new car leased by plaintiff was caused by a "defect" in the braking system and that the vehicle thus did not conform to defendant manufacturer's express warranty, although plaintiff introduced no evidence of any specific mechanical defect that caused the problems, where plaintiff's evidence tended to show that the dealer indicated that the clicking sound and vibration were caused by the anti-lock braking system and could not be corrected, and that the problems persisted after the replacement of worn parts.

**Am Jur 2d, Automobiles and Highway Traffic §§ 721 et seq.**

**Validity, construction, and effect of state motor vehicle warranty legislation (lemon law). 51 ALR4th 872.**

TAYLOR v. VOLVO NORTH AMERICA CORP.

[339 N.C. 238 (1994)]

5. **Automobiles and Other Vehicles § 259 (NCI4th)— New Motor Vehicles Warranties Act—manufacturer's unreasonable refusal to comply—sufficiency of evidence—treble damages**

The trial court did not err by finding that defendant manufacturer unreasonably refused to comply with the New Motor Vehicles Warranty Act and that plaintiff was entitled to treble damages where the evidence showed that plaintiff believed that a new vehicle he leased did not conform to the express warranty because of a continuing vibration in the front end and a clicking sound in a wheel; plaintiff had been to defendant's dealer numerous times in unsuccessful attempts to have the problems corrected; and in response to plaintiff's written assertion of rights under the Act, defendant did nothing more than make one unsuccessful attempt to reach plaintiff's attorney by phone. N.C.G.S. §§ 20-351.2, 20-351.3.

**Am Jur 2d, Automobiles and Highway Traffic §§ 721 et seq.**

**Validity, construction, and effect of state motor vehicle warranty legislation (lemon law). 51 ALR4th 872.**

6. **Automobiles and Other Vehicles § 259 (NCI4th)— New Motor Vehicles Warranties Act—manufacturer's unreasonable refusal to comply—reasonable use allowance—deduction before damages trebled**

When the trier of fact finds that a manufacturer unreasonably refused to comply with the New Motor Vehicles Warranty Act, the reasonable allowance for plaintiff consumer's use of the vehicle should be deducted from the damages recoverable before the damages are trebled. Considering both the "Replacement or refund" and "Remedies" sections of the Act in pari materia, the reference in the "Remedies" section to "[m]onetary damages . . . fixed by the verdict" which are subject to trebling was intended by the legislature to refer to the net sum due to an injured consumer from the manufacturer pursuant to the provisions of the "Replacement or refund" section, and this sum is the total of the refunds, including consequential damages, due to the consumer minus the reasonable allowance for the consumer's use of the vehicle. N.C.G.S. §§ 20-351.3, 20-351.8.

**Am Jur 2d, Automobiles and Highway Traffic §§ 721 et seq.**

**TAYLOR v. VOLVO NORTH AMERICA CORP.**

[339 N.C. 238 (1994)]

## Validity, construction, and effect of state motor vehicle warranty legislation (lemon law). 51 ALR4th 872.

Justice PARKER did not participate in the consideration or decision of this case.

On discretionary review pursuant to N.C.G.S. § 7A-31 of the decision of the Court of Appeals, 107 N.C. App. 678, 421 S.E.2d 617 (1992), affirming the judgment of Allen (W. Steven, Sr.), J., entered at the 18 February 1991 Session of Superior Court, Guilford County. Heard in the Supreme Court 11 May 1993.

*J. Sam Johnson, Jr., for plaintiff-appellee.*

*Smith Helms Mulliss & Moore, by William Sam Byassee, for defendant-appellant.*

EXUM, Chief Justice.

This case arises out of the lease of an automobile manufactured by Volvo North America Corporation (Volvo), defendant, to Curtis Taylor, plaintiff. Taylor sued Volvo under the New Motor Vehicles Warranties Act (the Act), N.C.G.S. §§ 20-351 to 20-351.10 (1993) alleging that the vehicle failed to conform to its express warranty. After hearing the evidence the trial court made findings of fact and conclusions of law and ruled for Taylor, awarding treble damages of $8106.85 plus interest and attorney fees of $4125. The Court of Appeals affirmed and we granted defendant's petition for discretionary review.

The questions presented are whether (1) the evidence supports the trial court's findings regarding the existence of the warranty and the automobile's nonconformity; (2) the findings of the trial court support its conclusion that defendant unreasonably refused to comply with the Act; and (3) the reasonable allowance for use of the car should be deducted from the damages recoverable before the trebling of damages. We affirm the Court of Appeals decision affirming the trial court's order on the first two questions, but we reverse its decision on the third question. We conclude, contrary to the Court of Appeals and the trial court, that the reasonable allowance for use of the car should be deducted from damages prior to the trebling of damages.

TAYLOR v. VOLVO NORTH AMERICA CORP.

[339 N.C. 238 (1994)]

I.

On 27 December 1988 Taylor went to Maxwell Volkswagen (Maxwell), an authorized dealer for Volvo, in Burlington, North Carolina, to lease an automobile for his business use. On that day he test drove a 1989 automobile manufactured by Volvo. This Volvo, which had been used by the wife of Maxwell's owner and which may have been used as a demonstration car, had slightly more than 700 miles on the odometer; Taylor was aware of the prior use of the car.

On the day Taylor tested and leased the car, he noticed an unusual noise and vibrations coming from the front left wheel. Taylor described the car's vibration as a "shimmy." Taylor pointed this out to at least two employees of Maxwell. Taylor leased the car on that day for 72 monthly payments of $486. Taylor testified that "they told me to drive it for a few days or a week or whatever and bring it back in and if I wasn't satisfied that they would correct the problem."

In order to maintain the vehicle warranty, Taylor was required to have the vehicle serviced by Maxwell after the first 1000 miles and every 5000 miles thereafter. Pursuant to this maintenance schedule, Taylor returned the car to Maxwell on 6 January 1989. Taylor testified that he then reported a "clicking noise in the front of the car. It happened when you put the brakes on." Taylor further testified that Maxwell balanced the wheels and that "they told me that it should take care of the shimmy and everything in the front of the car."

The shimmy in the Volvo, however, continued after 6 January 1989. On 6 March 1989 Taylor returned the car to Maxwell for its 5000 mile checkup. Taylor complained of a clicking in the wheel, or the brakes, and a shimmy. With respect to the clicking, the ticket stated, "no problem found—ABS pedal"; with respect to the shimmy, the ticket stated, "found no problem after tire rotation." Nevertheless, the problems persisted. On 16 May 1989 the Volvo was taken in again and Maxwell resurfaced the rotors for a fee, but the clicking noise and the shimmy remained. On 3 July 1989 the Volvo was taken in again and Maxwell's shop foreman drove the vehicle and determined that the anti-lock brakes were causing the shimmy and clicking noise. Taylor was told that the clicking noise was characteristic of the anti-lock braking system used on the type of Volvo he leased. The brake pads were changed but the problems persisted. On 10 July Maxwell made more repairs to the rotors, but the problems with the clicking and shimmy continued.

## TAYLOR v. VOLVO NORTH AMERICA CORP.

[339 N.C. 238 (1994)]

Taylor eventually quit driving the Volvo. At this time the vehicle had been driven approximately 22,000 miles, more than twice the distance permitted by the lease agreement. Plaintiff tried unsuccessfully to return the car to Maxwell and cancel the lease. Taylor stopped making payments after 27 July 1989, at which time he had paid $4511.95 in lease payments. On 11 September 1989 Taylor's counsel sent a letter to defendant indicating that Taylor's Volvo did not conform to the warranties, referring specifically to the brakes and shaking, and that Taylor wanted a refund of his payments or a comparable new car as provided by North Carolina's "Lemon Law." This was the only communication between Taylor and defendant while Taylor had the car. Due to an incomplete address, this letter was not received until 10 October 1989. Defendant made one attempt to reach Taylor's counsel by telephone, but that was unsuccessful. Taylor's car was repossessed on 25 October 1989. Joseph Blando, defendant's regional parts and service manager for North Carolina, inspected the car and found nothing wrong.

On 16 November 1989, Taylor sued defendant under the Act. N.C.G.S. §§ 20-351 to 351.10. Taylor testified that he leased the car and he described the problems he experienced with the car. He also introduced the repair tickets prepared by Maxwell relating to the car, evidence of his payments pursuant to the lease, and his correspondence with defendant. Taylor did not introduce the written warranty at trial. Plaintiff instead offered the testimony of Joseph Blando, who had worked for defendant as Regional Parts and Service Manager and who at the time of trial worked for defendant as Regional Sales Manager. The trial court accepted Blando as an expert on defendant's warranty. Blando testified that the Volvo was "warrantied for twelve months, unlimited mileage, the whole car, with exceptions for numerous things"; that the excepted items included tires, brake pads, rotors, and wheel balancing; and that based on the descriptions of the problems with the car, he could not determine whether these problems would be covered by the warranty.

The trial court found that the shimmy and clicking constituted a breach of defendant's express warranty. The trial court awarded Taylor $4511.95 plus interest, which represented the lease payments made, the $500 security deposit, and $123.95 in repair costs. The trial court further found that defendant unreasonably refused to comply with N.C.G.S. §§ 20-351.2 and 351.3, and trebled the damages to $13,535.85. The trial court then allowed defendant an offset of $5429, which represented a reasonable allowance for use of the vehicle.

TAYLOR v. VOLVO NORTH AMERICA CORP.

[339 N.C. 238 (1994)]

Finally, the trial court awarded the plaintiff attorney fees of $4125 due to defendant's unreasonable failure to resolve the matter.

Defendant appealed to the Court of Appeals, which affirmed. We granted discretionary review, and we now affirm in part and reverse in part.

II.

A.

In 1987 North Carolina enacted the New Motor Vehicles Warranties Act. 1987 N.C. Sess. Laws 502, 502-05. This legislation was designed to provide protection to purchasers of new vehicles beyond that offered by various state and federal mechanisms. *See* Heather Newton, Note, *When Life Gives You Lemons, Make A Lemon Law: North Carolina Adopts Automobile Warranty Legislation*, 66 N.C. L. Rev. 1080 (1988). Section 20-351.2 of the Act provides that "[i]f a new motor vehicle does not conform to all applicable express warranties for a period of one year, . . . [upon notification] the manufacturer shall make, or warrant to have made, repairs necessary to conform the vehicle to the express warranties . . . ." Section 20-351.3 further provides as follows:

(b) [In the case of a leased vehicle,] if the manufacturer is unable, after a reasonable number of attempts, to conform the motor vehicle to any express warranty by repairing or correcting, or arranging for the repair or correction of, any defect or condition or series of defects or conditions which substantially impair the value of the motor vehicle to the consumer, and which occurred no later than 24 months or 24,000 miles following original delivery of the vehicle, the manufacturer shall, at the option of the consumer, replace the vehicle with a comparable new motor vehicle or accept return of the vehicle from the consumer and refund the following:

(1) To the consumer:

a. All sums previously paid by the consumer under the terms of the lease;

b. All sums previously paid by the consumer in connection with entering into the lease agreement, including, but not limited to, any capitalized cost reduction, sales tax, license and registration fees, and similar government charges; and

TAYLOR v. VOLVO NORTH AMERICA CORP.

[339 N.C. 238 (1994)]

c. Any incidental and monetary consequential damages.

In the case of a refund, the leased vehicle shall be returned to the manufacturer and the consumer's written lease shall be terminated by the lessor without any penalty to the consumer. . . .

(c) Refunds shall be made to the consumer, lessor and any lienholders as their interests may appear. The refund to the consumer shall be reduced by a reasonable allowance for the consumer's use of the vehicle. A reasonable allowance for use is that amount directly attributable to use by the consumer prior to his first report of the nonconformity to the manufacturer, its agent, or its authorized dealer, and during any subsequent period when the vehicle is out of service because of repair. "Reasonable allowance" is presumed to be the cash price or the lease price, as the case may be, of the vehicle multiplied by ["the number of miles attributed to the consumer" divided by 100,000 miles.]

N.C.G.S. §§ 20-351(3) (1993).

If the "nonconformity has been presented for repair to the manufacturer, its agent, or its authorized dealer four or more times but the same nonconformity continues to exist," then "it is presumed that a reasonable number of attempts have been undertaken to conform a motor vehicle to the applicable express warranties." N.C.G.S. § 20-351.5(a)(1). "A consumer injured by reason of any violation of [this Act] may bring a civil action against the manufacturer . . . ." N.C.G.S. § 20-351.7. The consumer may recover attorney's fees if the manufacturer "unreasonably failed or refused to fully resolve the matter." N.C.G.S. § 20-351.8(3)a. Further, where the manufacturer "unreasonably refused to comply with G.S. 20-351.2 or G.S. 20-351.3," the monetary damages, as specified in N.C.G.S. § 20-351.3, shall be trebled. N.C.G.S. § 20-351.8(2).

[1] Thus, to recover a refund under the Act, a lessee or purchaser must establish (1) the terms of the manufacturer's express warranty, (2) that the vehicle failed to conform to the those terms in the warranty, and (3) that after a reasonable number of attempts to remedy that breach of the warranty (4) the vehicle still failed to conform.

Defendant argues the evidence was insufficient to establish liability under the Act. In determining the sufficiency of the evidence we must consider the evidence in the light most favorable to the party in whose favor judgment was rendered and give that party every reasonable inference to be drawn from the evidence. *Northern Nat'l Life*

*Ins. v. Miller Machine Co.*, 311 N.C. 62, 69, 316 S.E.2d 256, 261 (1984);
*Thomson v. Thomas*, 271 N.C. 450, 455, 156 S.E.2d 850, 853 (1967);
*Smith v. Stepp*, 257 N.C. 422, 425, 125 S.E.2d 903, 906 (1962).

In asserting that the evidence was insufficient defendant challenges the following finding by the trial court which underlies its judgment imposing liability under the Act:

> 5. Defendant extended to plaintiff as to the subject vehicle an express warranty that it would be free from defect in parts and workmanship for at least twelve months and ·for unlimited mileage, with some exceptions which are not applicable in this case. The continuing and uncorrected clicking noise and shimmy in the front of the vehicle were direct violations of that warranty so as substantially to impair the vehicle to plaintiff as consumer, making it non-conforming to the contract.

Specifically, defendant argues that Taylor has not sufficiently established the terms of the warranty and that Taylor has not shown a breach of warranty since he did not establish the cause of the shimmy and clicking.

The only question before us on this issue is whether there was sufficient evidence to support the trial court's finding. It is well settled that the trial court's findings of fact are conclusive if supported by competent evidence. *Lemmerman v. A.T. Williams Oil Co.*, 318 N.C. 577, 350 S.E.2d 83, *reh'g denied*, 318 N.C. 704, 351 S.E.2d 736 (1986). The finding will be upheld even if there is evidence to the contrary so long as there is evidence supporting that finding. *Williams v. Pilot Life Ins. Co.*, 288 N.C. 338, 218 S.E.2d 368 (1975).

## B.

[2] We first deal with whether plaintiff produced sufficient evidence of the manufacturer's express warranty. The Act does not set forth what constitutes a "warranty." We therefore presume that the legislature used that word in its ordinary sense. In the context of sales, "warranty" has been defined as "[a] promise or agreement by seller that [the] article sold has certain qualities . . . ." *Black's Law Dictionary* 1423 (1979). Further, in determining what constitutes an express warranty, we may look to other statutory provisions relating to warranties, such as Article 2, dealing with the sale of goods, and Article 2A, dealing with the lease of goods, found in Chapter 25 of the General Statutes. Those provisions state that a warranty is created by "[a]ny affirmation of fact or promise made by the seller [or lessor] to

**TAYLOR v. VOLVO NORTH AMERICA CORP.**

[339 N.C. 238 (1994)]

the buyer [or lessee] which relates to the goods and becomes part of the basis of the bargain." N.C.G.S. § 25-2-313(a) (pertaining to sales warranties); N.C.G.S. § 25-2A-210(1)(a) (pertaining to lease warranties).

Also, the Act is limited to "express" warranties. While it is possible that there exist certain implied warranties with the purchase or lease of a new vehicle, *see* N.C.G.S. § 25-2-314, express warranties are those warranties that are agreed upon by the parties by written or oral conduct. Thus, despite plaintiff's arguments to the contrary, the terms of a manufacturer's express warranties do not necessarily include that the vehicle will meet its owner's, or lessor's, expectations.

We are concerned therefore only with plaintiff's evidence relating to defendant's written warranty, which was not introduced into evidence.[1] Plaintiff introduced the testimony of Joseph Blando, an employee of defendant, found by the trial court to be an expert on defendant's warranty, to establish the terms of defendant's warranty. The relevant direct examination of Blando follows:

Q. And you were familiar with the warranty policies of the company as regards that particular model in 1989?

A. Yes, sir.

Q. Would you tell His Honor what the warranty of the manufacturer was on that car?

A. There are a number of warranties.

Q. With reference to parts and workmanship, what is the warranty?

A. With reference to parts?

Q. Parts and workmanship.

---

1. Plaintiff claimed that the written warranty, which was contained in the owner's manual, was in the car when it was repossessed. We recognize that the "best evidence rule" would normally require production of the written warranty since the plaintiff is seeking to prove the content of a writing. N.C. R. Evid. 1002 (1992). This issue, however, has not been argued below or on appeal and is not properly before us. Nevertheless, we note that Rule 1004 would probably permit plaintiff to establish the terms of the warranty through other means. This rule creates an exception to the best evidence rule if "[a]t a time when an original was under the control of a party against whom offered, he was put on notice, by the pleadings or otherwise, that the contents would be a subject of proof at the hearing, and he does not produce the original at the hearing." N.C. R. Evid. 1004(3).

A. Okay. The car—the car itself is warranted for twelve months, unlimited mileage, the whole car, with exceptions for numerous things.

Q. I didn't understand the last thing.

A. Well, there are exceptions for numerous items. One would be tires.

Q. All right. Your testimony then is that the car itself is warranted for twelve months and unlimited mileage?

A. Right.

Q. With certain exceptions, is that correct?

A. That's correct.

Q. What are the exceptions on this particular car warranty, to your knowledge?

A. Well, there are a number of them. Tires is one. There are specific exclusions for adjustments.

Q. To what?

A. Just about the entire car.

Q. What does that mean?

A. If you were to have to tighten nuts and bolts, for example, for different things, squeaks and rattle type items that are not covered for the same terms.

Q. Okay. What else is excepted to your knowledge?

A. Things that wear basically.

Q. Like what?

A. Brake pads, things that are consumed during the normal use.

Q. Are you saying that they did not warrant brake pads?

A. Not for wear.

Q. What about rotors?

A. At the time that the car was purchased, rotors were not included either for wear.

**TAYLOR v. VOLVO NORTH AMERICA CORP.**

[339 N.C. 238 (1994)]

Q. What about for warp?

A. It would depend on what caused the warped condition.

Q. So warped rotors were warranted, is that correct?

[objections]

A. Not in total, no.

Q. But you say "not in total." There would be exceptions for wear, is that correct? That is abuse or some outside influence?

A. Abuse would be an exception also.

This testimony is sufficient to establish the general nature of the warranty. Blando's description of defendant's warranty indicates that "the whole car" is warranted. The warranty, however, excludes "abuse[d]" items, items that need "adjustment," "[t]hings that wear," and "things that are consumed during the normal use." Thus, for example, brake pads with normal wear are not warranted since brake pads wear with use.

Blando was also asked specifically about whether a shimmy would be warranted:

Q. Okay. If there were a shimmy in the front wheels of this car, is that warranted under the 1989 warranty?

A. It would be warranted depending on what causes the shimmy.

Q. What if you delivered the new car to the individual on December 27, 1988 and there was a shimmy and you said—your dealer said he would fix it, is it warrantied?

A. If it would be related to the tires or wheel balance or something of that nature, no.

Q. What did you say?

A. It it [sic] would be related to the tires or a wheel balance condition or something of that nature, no.

. . .

Q. Have you heard anything in the evidence this morning about the condition of the car that was delivered to the consumer on that day that would except it from the warranty for that shimmy that your dealer said he would fix?

[objections]

A. I don't know.

Q. You don't know of any exception about the condition of this car that would except it from that condition, do you?

[objections]

A. To answer that question, I would have to know what the shimmy condition is to answer that question.

Blando was then questioned about his contact with plaintiff's vehicle. Examination concerning the warranty then continued:

Q. Okay. Now you have you [sic] heard the evidence about the problem with the brakes on this case?

A. Yes, sir.

Q. All right. Were the brakes warranted on this car, this particular model for parts and workmanship?

A. Depending upon the condition of the brakes, yes, sir, they were.

Q. What did it depend on?

A. It would depend on what the problem was with the brakes.

Q. Well, if the problem was a clicking in the brakes that was unexplained and unrepaired, was that warrantied or not?

A. The clicking in the brakes?

Q. Yes, sir.

A. It would be warrantied if it were in fact a defect, yes, sir.

This testimony further illuminates defendant's warranty covering plaintiff's Volvo. Consistent with Blando's earlier testimony regarding defendant's warranty generally, Blando indicated that the clicking constituted a breach of warranty if it was caused by a "defect" and that the shimmy constituted a breach of warranty unless it was caused by the tires, a wheel imbalance, or a problem of that nature.

We find Blando's testimony, while clearly inferior to presenting the written warranty itself, is sufficient to support the trial court's findings concerning the existence and the terms of defendant's express warranty material to this case.

**TAYLOR v. VOLVO NORTH AMERICA CORP.**

[339 N.C. 238 (1994)]

## C.

Defendant next argues that even if plaintiff has established the terms of the express warranty, he has not established the vehicle's nonconformity to that warranty because he has not shown the "cause" of the shimmy. Defendant emphasizes the plaintiff is not a mechanic and introduced no evidence linking any specific mechanical defect in the car to the clicking and the shimmy. Section 20-351.3(b) of the Act states that the manufacturer is liable to the purchaser of a new motor vehicle if it "is unable . . . to conform the motor vehicle to any express warranty by repairing or correcting . . . any defect . . . ." The buyer must therefore prove that the vehicle failed to conform to the express warranty.

[3] There is no statutory requirement, however, that the buyer in all cases prove the cause of the nonconformity or identify any specific mechanical defect related to the nonconformity. Where, for example, a vehicle is warranted to be free from vibrations, the plaintiff need show only the car vibrates; the cause or the specific defect leading to the vibration is immaterial to establishing that the car fails to conform to the express warranty. *See Scheuler v. Aamco Transmissions, Inc.*, 571 P.2d 48, 52, 1 Kan. App. 2d 525, 530 (1977) (where defendant warranted "performance" of transmission, "[p]roof of a specific defect was not required").

[4] The trial court in this case found that defendant warranted the car to be free from defects and that the "continuing and uncorrected clicking noise and shimmy" caused the car not to conform to that warranty. With the testimony of Joseph Blando, plaintiff produced sufficient evidence to support the findings that the car was warranted against defects which would cause it to shimmy or click. The next inquiry is whether plaintiff produced sufficient evidence that the shimmy or click, or both, was caused by a defect, as opposed to a worn or abused part or a part in need of adjustment. We conclude plaintiff met this burden.

Taylor testified that he took the Volvo to Maxwell on 3 July 1989. Taylor successfully importuned the shop foreman on that occasion to test drive the car to experience the shimmy. Taylor testified on direct examination that, "he was trying to tell me that the problem in the car was that they had put anti-lock brakes on the car is what he told me." Taylor later testified on cross examination:

Q. Mr. Taylor . . . When you thought that they didn't fix it, you didn't go back to them, and say, "What in the world is going on; you didn't fix this problem?"

A. I most certainly did. I went back so many times they hid from me when I went back to the dealership.

Q. Mr. Taylor, they were telling you that they couldn't find the problem, isn't that correct?

A. They were telling me—no, that's not correct. *They were telling me that they couldn't fix the problem* is what they were telling me.

Q. Mr. Taylor, doesn't it say on these tickets, "No problem found?"

A. That's what they said. I would go back and keep complaining about the car. And it wasn't until—I don't know the guy, but I think the guy's name was Jordan and I rode down the interstate. *They kept telling me that because of the antilock brakes that was new on that model, and they kept telling me they had a problem with the brake pads.*

Q. *They kept telling you that the antilock brake system was what was causing this clicking. Isn't that what they said?*

A. *That's what the shop foreman was telling me.*

Q. *And said that was normal. Isn't that correct?*

A. *That's what he was telling me; that it was normal.*

(Emphasis added.) Regarding this testimony, the trial court made the following finding of fact: "[T]he dealership's shop foreman drove the vehicle, [and] determined that there was a shimmy and a clicking which he attributed to the anti-lock brakes . . . ." Defendant did not except to this finding; and, in any event, we find it supported by the evidence. Thus, it is binding on appeal.

The communications between plaintiff and one or more employees of Maxwell indicate that the shimmy and clicking experienced by the plaintiff were caused by the anti-lock braking system. These statements also lead to a strong inference that the shimmy and clicking were caused by problems relating to the manufacture, or the design, of the braking system itself, rather than by any wear or any particular use by the plaintiff. The shop foreman stated that the problems plain-

tiff experienced with the car were "normal," were caused by the type of braking system used on plaintiff's model, and could not be fixed. Further, the numerous unsuccessful attempts to remedy the problem, which included rotating tires, changing brake pads and resurfacing the rotors, indicate the shimmy and clicking were due to the braking system itself and tend to negate any implication that the problem was caused by the ordinary wear of parts. Evidence of shimmying and clicking, extant on the day of purchase when the car had only 700 miles, which defendant's authorized dealer identifies with the braking system on the car, which defendant's authorized dealer states "cannot be fixed," and which persisted after the replacement of worn parts, is sufficient to support a finding that these problems were caused by a "defect" and not by abuse, wear, or maladjusted settings.

Thus, although the plaintiff has not shown the precise mechanical defect within his braking system, he has produced enough evidence to establish that the shimmy and clicking were caused by a "defect" in the braking system. Since, according to defendant's former regional parts and service manager, the warranty covered shimmying and clicking caused by a "defect," as opposed to worn, consumed, abused, or maladjusted parts, plaintiff's evidence is sufficient to support the trial court's finding that the shimmy and clicking constitute a nonconformity to, or breach of, the warranty.

We also note that in discussing this issue plaintiff refers to a statement made by an employee of Maxwell that "they would correct the problem" if it persisted. Since we have found the other evidence sufficient to support the trial court's finding imposing liability under the Act, we need not decide this issue on that statement. Nevertheless, we agree with plaintiff that, when viewed in the light most favorable to him, this is some evidence that the continued clicking and shimmying constituted a nonconformity with the warranty which would support liability under the Act. We do not, however, treat this statement by Maxwell's employee as creating additional warranties above those created by Volvo.[2]

2. If the employee of Maxwell created a warranty as to the vehicle, it is binding only as to Maxwell, and not as to defendant, unless Maxwell had the authority to bind defendant. *Commercial Solvents, Inc. v. Johnson*, 235 N.C. 237, 69 S.E.2d 716 (1952) (statements by purported agent held inadmissible against principal to modify contract where it was not established that the agent had the actual or apparent authority to modify the contract). There is, however, no evidence that defendant expressly authorized Maxwell to alter the warranty, and plaintiff has introduced no evidence, or even argued, that Maxwell had either actual or apparent authority to modify defendant's warranty. *See Black v. Ford Motor Co.*, 600 So. 2d 1029, 1033 (Ala. App. 1992) (state-

III.

[5]  Defendant next challenges the determination by the trial court that it unreasonably refused to comply with sections 20-351.2 & 20-351.3 of the Act.

Section 20-351.8 of the Act provides that "damages shall be trebled upon a finding that the manufacturer unreasonably refused to comply with G.S. 20-351.2 or 20-351.3." Sections 20-351.2 and 20-351.3 of the Act pertain to the manufacturer's duty to "make, or arrange to have made, repairs necessary to conform the vehicle to express warranties" and its duty to replace the vehicle or provide a refund if a nonconformity persists after a reasonable number of attempts to conform the vehicle.

The evidence was that defendant had returned his car to Maxwell on numerous occasions complaining of shimmying and clicking. Despite his efforts to have these problems fixed, the problems with the vehicle persisted. In July Taylor attempted to return the car to Maxwell and cancel the lease; Maxwell, however, refused to accept the car. On 11 September 1989 plaintiff's attorney sent a letter to defendant stating the following:

> As attorney for Curtis Wilson Taylor, the Lessee from Maxwell Volkswagen, Inc., 2919 North Church Street, Burlington, N.C. 27215, on 27 December 1988, I am herewith notifying you, pursuant to North Carolina General Statutes, Section 20-351 [New Motor Vehicles Warranties Act (Lemon Law)], as the manufacturer of the above-leased automobile, that he, as consumer, has reported non conformities [sic] to your manufacturer's warranty to the dealer on some ten occasions, without satisfaction, and that pursuant to that statute, you are required to make, or arrange to have made, repairs necessary to conform the vehicle to your express warranties.

> My client feels that he has made a reasonable number of attempts to conform this motor vehicle to your express warranty and, having failed to achieve satisfaction, elects to replace the vehicle with a comparable new motor vehicle or to receive refund of his full contract price, collateral charges, finance charges, and incidental damages and monetary consequential damages.

ment of car dealer relating to warranty inadmissible against manufacturer unless plaintiff establishes that dealer was agent of manufacturer or that dealer was given authority to modify warranty); compare Volkswagen of America, Inc. v. Harrell, 431 So. 2d 156, 162 (Ala. 1983) (since evidence showed that dealership had authority to impose additional conditions to warranty, it had authority to extend manufacturer's warranty).

## TAYLOR v. VOLVO NORTH AMERICA CORP.

[339 N.C. 238 (1994)]

The primary complaint has been with regard to the brakes and the shaking of the vehicle, which have resulted in the wearing out of tires. I would be glad to detail with your manufacturer's representatives the other complaints.

This notice is given you to allow a reasonable period, not to exceed fifteen (15) calendar days, for you to correct the non conformity [sic] or series of non conformities [sic]. After that period of time, failing in satisfaction, the client intends to pursue his remedies under G.S. 20-351.1.8. I look forward to your early reply.

This letter was not received by defendant until 10 October 1989 due to an incomplete address. Defendant conferred with Volvo Finance about the matter. It then made one unsuccessful attempt to contact plaintiff's counsel. Defendant took no other action regarding plaintiff's letter. On 25 October 1989 Volvo Finance repossessed plaintiff's vehicle.

Material to its conclusion that defendant unreasonably refused to comply with the Act is this finding by the trial court:

8. On 10 October 1989, defendant acknowledges receipt of plaintiff's counsel's 11 September 1989 letter, whereby both defendant and Volvo Finance of North America, Inc. were notified under G.S. 20-351 et seq., and between then and 25 October 1989, defendant attempted only one telephone call, which was unsuccessful, and it took no further action to attempt to remedy the non-conformity [sic] in its warranty or to attempt to repair the subject vehicle. Plaintiff attempted to return the car to defendant's dealer, and the dealer refused to accept the car.

Other than the implication in this finding that the vehicle did not conform to the warranty, defendant did not except to this finding. The issue before us is whether the finding supports the trial court's conclusion of law that defendant "unreasonably refused to comply with the requirements of G.S. 20-351.2 and 351.3."

Defendant argues that while it may have failed to comply with sections 20-351.2 and 20-351.3 of the Act, there was no evidence that it "refused" to do so. In support of its contention that there is a distinction between failing and refusing, defendant refers to the provision that attorneys' fees shall be awarded when the manufacturer "unreasonably failed or refused" to resolve the matter. N.C.G.S. § 20-351.8(3)(a).

We agree that there is a distinction between refusing to comply and failing to comply with the Act. The trial court's finding number 8, however, and the evidence upon which it rests support the trial court's conclusion that defendant unreasonably refused to comply. The evidence and the finding establish: Plaintiff believed his vehicle failed to conform to the express warranty. Plaintiff had been to Maxwell several times regarding the problems. Defendant had certain obligations under the Act, and plaintiff was asserting his rights under the Act. In response to plaintiff's assertion of rights under the Act defendant did nothing more than to attempt to make one phone call to plaintiff's attorney, which failed. Since the trial court's conclusion, that defendant unreasonably refused to comply with the Act, is supported by the findings and the findings are supported by the evidence, the trial court's decision that plaintiff was entitled to treble damages pursuant to N.C.G.S. § 20-351.8(3)(a) was correctly affirmed by the Court of Appeals.

IV.

[6]   Defendant next contends that even if plaintiff were entitled to treble damages, the manner in which the trial court computed those damages was error. We agree.

The trial court found that plaintiff was due a refund under the Act in the sum of the lease payments made, security deposit and repairs, which sum the trial court found to be $4511.95. It trebled that amount, to $13,535.85, and then reduced that amount by a reasonable allowance for plaintiff's use of the vehicle, which it found to be $5429. Thus, the final judgment awarded plaintiff was $8106.85. We are of the opinion that the reasonable allowance for plaintiff's use of the vehicle should have been deducted from the refunds due as found by the trial court before they were trebled.

Our conclusion is based on our understanding of the interplay between the "Replacement or refund" section of the Act, N.C.G.S. § 20-351.3, and the "Remedies" section of the Act, § 20-351.8. The "Replacement or refund" section of the Act defines, among other things, the monetary obligations of the manufacturer under the circumstances set out in subsection (a) of this section. These monetary obligations provide that, in the case of a lessee, the manufacturer must refund:

a. All sums previously paid by the consumer under the terms of the lease;

**TAYLOR v. VOLVO NORTH AMERICA CORP.**

[339 N.C. 238 (1994)]

b. All sums previously paid by the consumer in connection with entering into the lease agreement . . .; and

c. Any incidental and monetary consequential damages.

These refunds, under subsection (c) of this section, "shall be reduced by a reasonable allowance for the consumer's use of the vehicle." Thus, under the "Replacement or refund" section of the Act, the net amount recoverable by a lessee entitled to a refund is the sum of the refundable amounts less a reasonable allowance for the lessee's use of the vehicle.

Under the "Remedies" section of the statute, a court is authorized to grant several forms of relief. They are "injuncti[ve] or other equitable relief"; monetary damages "as fixed by the verdict"; and attorney's fees under the circumstances defined by this section. N.C.G.S. § 20-351.8. The remedies section also provides that the damages fixed by the verdict shall be trebled if the manufacturer unreasonably refused to comply with the "Replacement or refund" section of the Act or with section 20-351.2. The "Remedies" section permits the jury to consider in its award of damages the items listed for refund in the "Replacement or refund" section.

The question is, considering both the "Replacement or refund" section of the Act and the "Remedies" section, in pari materia, what did the legislature intend by its reference in the "Remedies" section to "[m]onetary damages . . . fixed by the verdict," which are subject to trebling. We think the legislature intended to refer to the net sum due to an injured lessee from the manufacturer pursuant to the provisions of the "Replacement or refund" section. This sum, as we have shown, is figured by totalling the refunds, which include consequential damages, due to the consumer less the reasonable allowance for the consumer's use of the vehicle. Our conclusion is based on the reasons which follow.

Damages to which an injured party is entitled should ordinarily reflect the harm actually sustained by the injured party. To the extent that a claimant under the Act receives a benefit through the use of the vehicle, his damages are lessened. This is the policy underlying the "Replacement or refund" section of the Act.

The policies underlying the treble damages provision provide further support for our interpretation. Treble damages within Chapter 75, regarding unfair and deceptive acts affecting commerce, are designed to encourage private enforcement of violations of Chapter

TAYLOR v. VOLVO NORTH AMERICA CORP.

[339 N.C. 238 (1994)]

75 and to encourage settlements. *Marshall v. Miller*, 302 N.C. 539, 549, 276 S.E.2d 397, 403-04 (1981). We believe the treble damages provision within the Act before us is designed to accomplish similar purposes. Trebling of the damages encourages private settlement by providing incentive to those who, arguably, have violated remedial statutes like Chapter 75 and the Act before us. It also provides incentive for private enforcement to arguably injured consumers. We also believe, however, that the legislature intended the encouragement of private enforcement and settlement be directly proportional to the actual harm suffered by the consumer. This leads us to the conclusion that the legislature intended that, pursuant to the Act, only the net loss to the consumer should be trebled.

Our interpretation is in accord with the only cases found to have addressed this issue. Wisconsin has a statute similar to ours that provides that if a nonconformity is not repaired after a reasonable number of attempts, the manufacturer must accept return of the vehicle and, at the consumer's option, either replace the vehicle or refund "the full purchase price plus any sales tax, finance charge, amount paid by the consumer at the point of sale and collateral costs, less a reasonable allowance for use." Wis. Stat. Ann. §§ 218.015(2)(a), (b)(1), & (b)(2) (1994). A consumer who establishes a violation of the Act shall be awarded "twice the amount of any pecuniary loss, together with costs, disbursements and reasonable attorneys fees, and any equitable relief the court determines appropriate." Wis. Stat. Ann. § 218.015(7). The Wisconsin Court of Appeals interpreted this statutory scheme to require that the allowance for use be deducted prior to doubling the award, reasoning that "the consumer suffers pecuniary loss in the amount of the refund he should have received." *Nick v. Toyota Motor Sales, U.S.A., Inc.*, 466 N.W.2d 215, 219-20 (1991). This same method of computation was applied in *Voorhees v. General Motors Corp.*, 1990 WL 29650 (E.D. Pa. 1990), a case involving Pennsylvania's statute which is substantially similar to our own, to determine whether the amount in controversy met the jurisdictional requirement. *See also Smith v. Baldwin*, 611 S.W.2d 611, 617 (Tex. 1980) (within Texas' Deceptive Trade Practices Act, statute entitling plaintiff to "three times the amount of actual damages" refers to the "total loss sustained" and thus "[a]llowable setoffs will necessarily reduce the actual damages and hence the sum subject to trebling").

Plaintiff argues for the contrary interpretation based on the language of section 20-351.8(2) of the Act that "[t]he jury may consider as damages all items listed for refund under G.S. 20-351.3." While this

language does not expressly state that the allowance is to be deducted from damages prior to trebling, it does not expressly prohibit the deduction. In light of the Act's requirement that a manufacturer refund damages less a reasonable allowance for use and in light of the policies of the Act, we do not interpret the language referred to by plaintiff to implicitly limit the calculation of damages to the aggregate of the "items listed for refund under G.S. 20-351.3." We think the legislature was enumerating certain forms of damages which could be considered and did not intend to define the computation of damages to be trebled.

The "Remedies" section of the Act makes no explicit provision for the reasonable allowance for use and we think this supports our interpretation of this section. The parties agree the manufacturer is entitled to an allowance equal to the plaintiff's use of the vehicle, the question being the point at which that allowance is taken into account. That the "Remedies" section does not explicitly provide for consideration of the reasonable allowance for plaintiff's use is a strong indication that the legislature understood the reasonable allowance for use to have already been taken into account in the "amount fixed by the verdict," which is the amount to be trebled.

Thus, the trial court erred in trebling damages without having deducted the reasonable allowance for use. In this case, the lease payments and other expenditures totalled $4511.95 and the trial court found a reasonable allowance for use to be $5429. On these facts there are no damages remaining to be trebled.

Plaintiff, aware that such would be the result if the allowance is deducted prior to trebling, asserts that under such a method of computation "there could be no real damage ever to a lessee, since payments would generally stay abreast of usage." We disagree. First, while it may be generally true that lease payments would correlate with use of a vehicle, that does not take into account the other forms of damages allowed under the Act, such as other amounts paid in connection with entering the lease agreement and any incidental or consequential damages. N.C.G.S. § 20-351.3(b)(1). Second, the allowance for reasonable use of the vehicle does not include any time during which the vehicle is out of service because of repair, N.C.G.S. § 20-351.3(c), and takes into account that the value of the vehicle to the consumer is substantially impaired. The reasonable allowance for use in this case exceeded plaintiff's damages probably because plaintiff drove the vehicle more than twice the distance allowed by the

lease agreement. We also note that the plaintiff may be awarded attorneys' fees where the manufacturer unreasonably fails or refuses to resolve the matter. N.C.G.S. § 20-351.8(3)a. In reaching a contrary conclusion on the treble damages issue, the Court of Appeals relied in part on *Seafare Corp. v. Trenor Corp.*, 88 N.C. App. 404, 363 S.E.2d 643, *disc. rev. denied*, 322 N.C. 113, 367 S.E.2d 917 (1988) and *Washburn v. Vandiver*, 93 N.C. App. 657, 379 S.E.2d 65 (1989), which dealt with treble damages arising under Chapter 75. We believe the two statutes are not comparable on this issue. The Act before us specifically provides for the damages, i.e. refunds, to a consumer to be reduced by a reasonable allowance for the vehicle's use. Chapter 75 has no such offsetting provisions.

Furthermore, both cases relied on by the Court of Appeals are distinguishable. In *Seafare* the Court of Appeals was faced with whether amounts received by a plaintiff from a third party in settlement should be reduced from his damages prior to trebling. *Seafare*, 88 N.C. App. at 416, 363 S.E.2d at 652. In this context, it could not be fairly said that the injury, or damage, plaintiff sustained as a result of defendant's conduct was reduced to the extent that another person compensated plaintiff for that injury. Such a result would jeopardize the result intended by the legislature in providing for treble damages. *See Flintkote Co. v. Lysfjord*, 246 F.2d 368, 397-98 (9th Cir.), *cert. denied*, 355 U.S. 835, 2 L. Ed. 2d 46 (1957). *See also Blankenship v. McKay*, 534 N.E.2d 243, 246 (Ind. App. 1989) (where plaintiff sought treble damages for embezzlement and prior criminal proceeding against defendant resulted in restitution order that defendant repay plaintiff, proper method of calculation is to treble damages regardless of any payments made pursuant to restitution order).

In *Washburn* the plaintiff purchased a used truck from defendant who had tampered with the truck's odometer. 93 N.C. App. at 658, 379 S.E.2d at 66. Plaintiff paid part of the purchase price immediately and agreed to pay the remainder in bi-weekly installments. When plaintiff discovered the odometer tampering and demanded a refund of his money and compensation for expenses incurred on the truck, defendant refused. Plaintiff sued under state and federal odometer statutes and under Chapter 75; defendant counterclaimed for the balance of the purchase price still owing. *Id.* at 658, 660, 379 S.E.2d at 66, 67. The Court of Appeals was faced with whether the debt should be deducted before or after trebling plaintiff's damages. *Id.* at 664, 379 S.E.2d at 69. The Court ruled that, considering the legislative intent, the amount due on the debt should be deducted after trebling. Again,

TAYLOR v. VOLVO NORTH AMERICA CORP.

[339 N.C. 238 (1994)]

in such a situation, it could not be fairly said that plaintiff's damages should be reduced by amounts owing on a debt for which plaintiff remained liable.

*Washburn* in fact recognizes that any benefit received by the plaintiff is to be deducted prior to trebling under Chapter 75. *Washburn* states:

> The evidence discloses that plaintiffs paid $2,000.00 for the vehicle, signed a note for an additional $782.50 and invested an additional $300.00 for tires less than one month after purchase. The jury concluded that they had been damaged in the amount of $1,300.00 pursuant to the unfair trade practices claim. The trial court then followed the mandate of G.S. sec. 75-16 and trebled this amount.

*Id.* at 664, 379 S.E.2d at 69. Thus, the jury in computing damages did not merely total the plaintiff's expenses in connection with the truck; it clearly reduced that sum by some amount to arrive at the plaintiff's actual damages to be trebled under Chapter 75. While the opinion does not set forth clearly what that amount consisted of, presumably that amount represented the benefit the plaintiff received in the transaction, and most likely that was the value of the truck.

Thus, we conclude the trial court improperly calculated plaintiff's recovery by failing to reduce plaintiff's damages by the reasonable allowance for use before trebling damages under N.C.G.S. § 20-351.8(2) and the Court of Appeals decision affirming this calculation should be reversed. Since the allowance for plaintiff's use of the vehicle exceeded his damages, plaintiff recovers no damages on his claim under the Act. Defendant's obligation to pay attorneys' fees, as ordered by the trial court and discussed above in Issue II, remains unaffected.

V.

Finally, defendant argues that the trial court improperly adjudicated the rights of Volvo Finance of North America, Inc., a non-party to the litigation. On this issue we agree with the Court of Appeals' decision that if Volvo Finance is a separate corporation from defendant, as argued by defendant, then defendant has no standing to raise this issue on the behalf of Volvo Finance.

The result is as follows: The decision of the Court of Appeals affirming the trial court's findings on the warranty issues is affirmed.

**TAYLOR v. VOLVO NORTH AMERICA CORP.**

[339 N.C. 238 (1994)]

The decision of the Court of Appeals affirming the trial court's method of trebling damages is reversed and this case is remanded to the Court of Appeals for further remand to Superior Court, Guilford County, for the entry of a judgment consistent with this opinion.

Accordingly, the decision of the Court of Appeals is

AFFIRMED IN PART; REVERSED IN PART; REMANDED.

Justice Parker did not participate in the consideration or decision of this case.