**EUGENE TUCKER BUILDERS, INC. v. FORD MOTOR CO.**

[175 N.C. App. 151 (2005)]

Vacated.

Judges CALABRIA and GEER concur.

━━━━━━━━━━━━━━

EUGENE TUCKER BUILDERS, INC., AND EUGENE TUCKER, PLAINTIFFS v. FORD
MOTOR COMPANY, DEFENDANT

No. COA05-72

(Filed 20 December 2005)

**Motor Vehicles; Warranties— breach of express warranty—
vehicle lease**

The trial court did not err by granting summary judgment in
favor of defendant lessor on plaintiff lessee's claim seeking reme-
dies under N.C. Gen. Stat. § 20-351 et seq. of the New Motor Ve-
hicles Warranties Act, because: (1) plaintiff has not forecast evi-
dence that his vehicle failed to conform to the express warranty,
and thus, his claim is lacking in an essential element; (2) defend-
ant has established that a non-Ford part was installed on plain-
tiff's vehicle, that this part is excluded from coverage under the
express warranty, and the damage to the vehicle was caused by
the non-Ford part; (3) plaintiff's affidavit does not create an issue
of material fact regarding whether the manufacturer of the anti-
theft device, DEI, was a Ford-authorized manufacturer when the
affidavit does not satisfy the personal knowledge requirement of
N.C.G.S. § 1A-1, Rule 56(e), and thus, it could not have been con-
sidered by the trial court in ruling on the summary judgment
motion; and (4) both of defendant's two affidavits state that the
information is based on the affiant's personal knowledge of Ford-
authorized manufacturers through employment positions.

Judge HUDSON dissenting.

Appeal by plaintiffs from order entered 19 July 2004 by Judge
Robert P. Johnston in Lincoln County Superior Court. Heard in the
Court of Appeals 15 September 2005.

*Sigmon, Sigmon & Isenhower, by W. Gene Sigmon, for
plaintiffs-appellants.*

*Maupin Taylor, P.A., by M. Keith Kapp and Kevin W. Benedict,
for defendant-appellee.*

**EUGENE TUCKER BUILDERS, INC. v. FORD MOTOR CO.**

[175 N.C. App. 151 (2005)]

ELMORE, Judge.

Eugene Tucker Builders, Inc. and Eugene Tucker (plaintiff) appeal an order of the trial court granting summary judgment in favor of Ford Motor Company (defendant). On 2 January 2001 plaintiff leased a new Lincoln Navigator from Town Square, an authorized Ford dealership in Lincolnton, North Carolina. Defendant provided the vehicle with an express warranty, the "New Vehicle Limited Warranty." This warranty applied for four years or 50,000 miles, whichever occured first, and covered all parts except tires that are defective in factory-supplied materials or workmanship. The warranty stated that it did not cover damage caused by "non-Ford parts installed after the vehicle leaves Ford's control."

At the time of the lease, on 2 January 2001, plaintiff requested that Town Square install a remote start system in the vehicle. On 3 January 2001 Southland Dealer Services (Southland) sold and delivered a remote start system and an anti-theft bypass, which is a device that connects the remote start system to the vehicle. Southland is an authorized Ford parts distributor located in Charlotte. Southland did not install either the remote start system or the anti-theft bypass. Instead, Mobile Environment, Inc. (Mobile Environment) installed the remote start system shipped by Southland. Mobile Environment also installed an anti-theft bypass, but this device was not the one manufactured by Ford and shipped by Southland. The anti-theft device was manufactured by Directed Electronics, Inc. (DEI).

Within one week of accepting delivery of the vehicle, plaintiff began experiencing problems with the vehicle's electrical system. Plaintiff alleged that the vehicle alarm began to go off every thirty minutes and that the vehicle would suddenly stall while driving on the road. Plaintiff also alleged that he returned the vehicle to Town Square on eight or nine occasions for repair, most recently in December of 2002. By letter dated 7 March 2003 plaintiff informed defendant of his intention to pursue remedies under N.C. Gen. Stat. § 20-351 *et seq.*, the New Motor Vehicles Warranties Act. In compliance with the statute, plaintiff requested that defendant cure the alleged defects within 15 days of receipt of the letter.

During this cure period, the vehicle was transported to an authorized Ford dealership in Fort Mill, South Carolina. Technicians at the Fort Mill dealership removed the remote start system and the anti-theft bypass. After removal of these accessories, the vehicle was transported back to Town Square. A Ford Service Engineer at Town

Square inspected the vehicle and declared it to be in compliance with defendant's express limited warranties.

Plaintiff filed the instant action on 11 July 2003. Defendant filed its Answer on 16 September 2003 and moved for summary judgment on 8 March 2004. Following a hearing, the trial court granted defendant's motion for summary judgment and dismissed plaintiff's action with prejudice. From this order entered 19 July 2004, plaintiff appeals.

The New Motor Vehicles Warranties Act provides that:

> When consumer is a lessee, if the manufacturer is unable, after a reasonable number of attempts, to conform the motor vehicle to any express warranty by repairing or correcting, or arranging for the repair or correction of, any defect or condition or series of defects or conditions which substantially impair the value of the motor vehicle to the consumer, and which occurred no later than 24 months or 24,000 miles following original delivery of the vehicle, the manufacturer shall, at the option of the consumer, replace the vehicle with a comparable new motor vehicle or accept return of the vehicle from the consumer and refund the following:
>
> (1) To the consumer:
>
> a. All sums previously paid by the consumer under the terms of the lease;
>
> b. All sums previously paid by the consumer in connection with entering into the lease agreement, including, but not limited to, any capitalized cost reduction, sales tax, license and registration fees, and similar government charges; and
>
> c. Any incidental and monetary consequential damages.

N.C. Gen. Stat. § 20-351.3(b) (2003). As such, a lessee seeking recovery under this Act must show "(1) the terms of the manufacturer's express warranty, (2) that the vehicle failed to conform to those terms in the warranty, and (3) that after a reasonable number of attempts to remedy that breach of the warranty (4) the vehicle still failed to conform." *Taylor v. Volvo North America Corp.*, 339 N.C. 238, 245, 451 S.E.2d 618, 622 (1994).

Plaintiff assigns error to the trial court's grant of summary judgment on the basis that issues of material fact exist which should be

presented to a jury. Specifically, plaintiff contends that the remote start system and the anti-theft bypass installed on the vehicle were Ford parts covered by the express warranty. Defendants argue, in contrast, that the anti-theft bypass was not manufactured by a Ford-authorized manufacturer and was not installed by a Ford-authorized installer.

Initially, we note the parties agree that a Ford-authorized parts distributor, Southland, sold and shipped the accessory parts to Town Square. The dispute involves the question of whether the company that manufactured the anti-theft bypass, DEI, is a Ford-authorized manufacturer such that this part was covered by defendant's express warranty. Defendant contends that summary judgment was properly granted because it is undisputed that a non-Ford part was installed in the vehicle and the plain language of the express warranty excludes damage caused by non-Ford parts.[1] The express warranty provides, in pertinent part:

WHAT IS NOT COVERED?

Damage Caused By:

. . .

• non-Ford parts installed after the vehicle leaves Ford's control. For example, but not limited to, cellular phones, alarm systems, and automatic starting systems

. . .

Other Items and Conditions Not Covered

Your New Vehicle Limited Warranty does not cover:

• non-Ford parts of your vehicle, for example, parts (including glass) installed by body builders or manufacturers other than Ford, or damage to Ford components caused by installation of non-Ford parts

Defendant cites to a case in another jurisdiction, *Malone v. Nissan Motor Corp.*, 526 N.W.2d 841 (Wis. Ct. App. 1994), in which an appellate court determined that an after-market added accessory did not come within a new vehicle express limited warranty. In *Malone*, the plaintiff argued that a spoiler added to a new vehicle by the dealer

---

1. Defendant also notes that an unauthorized modification by the consumer is an affirmative defense to a claim under the New Motor Vehicles Warranties Act. *See* N.C. Gen. Stat. § 20-351.4 (2003).

was covered by Nissan's new vehicle limited warranty. However, the court determined that there was no evidence that Nissan manufactured the spoiler and, since Nissan's warranty covered only parts supplied by Nissan, that the warranty did not include the defective spoiler. *Id.* at 843. We also determine that under the express warranty here, damage caused by non-Ford parts are excluded from Ford's express warranty coverage and thus cannot be the basis of relief under the New Motor Vehicles Warranties Act. If the part was not manufactured by Ford, then summary judgment was proper in favor of defendant. Thus, we now consider whether there is evidence in the instant case that DEI, the manufacturer of one of the accessory parts installed, was a Ford-authorized manufacturer.

Both parties filed affidavits in connection with the summary judgment hearing. Defendant submitted to the trial court the affidavit of Brett Little, who is employed by Ford Motor Company as an Office Operations Specialist and previously held a position as Ford Service Engineer. Mr. Little stated that these positions required his familiarity with Ford-manufactured parts and accessories. Mr. Little stated that, upon his inspection, the remote start system was a Ford part but the anti-theft bypass was a cheaper non-Ford part. Mr. Little further stated that plaintiff experienced problems with the remote start system because the anti-theft by-pass was not a Ford part.

Plaintiff submitted to the court the affidavit of James R. Rhyne, a former manager of the Charlotte, North Carolina office of Mobile Environment. Mr. Rhyne testified that Mobile Environment installed the anti-theft bypass device in plaintiff's vehicle and that Mobile Environment is an authorized service and installation representative of Ford Motor Company. He also stated that the manufacturer of the bypass device, DEI, is an authorized manufacturer of Ford Motor Company electronic systems.

Thereafter, defendant submitted the affidavit of Jim Cooper, an employee of Visteon Corporation, a parts supplier for Ford Motor Company. Mr. Cooper stated that he had reviewed the affidavit of James R. Rhyne. Mr. Cooper stated that, contrary to Mr. Rhyne's statement, Mobile Environment was not affiliated with Ford in any way prior to 25 February 2004. Mr. Cooper also stated that DEI manufactures an anti-theft bypass that is compatible with Ford vehicles but that DEI does not have any relationship with Ford and does not manufacture an anti-theft bypass device for Ford.

After carefully reviewing the record, we conclude that plaintiff's affidavit does not create an issue of material fact regarding whether the manufacturer of the anti-theft device, DEI, was a Ford-authorized manufacturer. "[W]hen affidavits are offered in opposition to a motion for summary judgment, they must 'be made on personal knowledge, . . . set forth such facts as would be admissible in evidence, and . . . show affirmatively that the affiant is competent to testify to the matters stated therein.' " *Weatherford v. Glassman*, 129 N.C. App. 618, 623, 500 S.E.2d 466, 469 (1998) (quoting N.C. Gen. Stat. § 1A-1, Rule 56(e)). Here, Mr. Rhyne's affidavit does not indicate how he had personal knowledge that DEI is an authorized Ford parts manufacturer. It appears that the source of Mr. Rhyne's information is an exhibit attached to his affidavit, which is a diagram published by DEI illustrating how to wire an anti-theft bypass to a Ford vehicle. This document does not establish that DEI is a Ford-authorized manufacturer. The document was not published by Ford, and Mr. Rhyne avers no other affiliation with Ford Motor Company or Ford-authorized manufacturers. Also, Mr. Rhyne does not assert that his knowledge is based upon business records that he reviewed in the course of his employment. *Cf. Moore v. Coachmen Industries, Inc.*, 129 N.C. App. 389, 396, 499 S.E.2d 772, 777 (1998) (affiant's statements based upon review of his employer's business records in course of his employment satisfied personal knowledge requirement of Rule 56(e)). As the content of the Rhyne affidavit does not satisfy the personal knowledge requirement of Rule 56(e), it could not have been considered by the trial court in ruling on the summary judgment motion. *See Strickland v. Doe*, 156 N.C. App. 292, 295-96, 577 S.E.2d 124, 128-29 (trial court may not consider portions of affidavit which were not made on affiant's personal knowledge), *disc. review denied*, 357 N.C. 169, 581 S.E.2d 447 (2003); *Hylton v. Koontz*, 138 N.C. App. 629, 634, 532 S.E.2d 252, 256 (2000) ("content and context [of Rule 56 affidavit] must show its material parts are founded on the affiant's personal knowledge"), *disc. review denied*, 353 N.C. 373, 546 S.E.2d 603 (2001).

In contrast, both the Cooper and Little affidavits submitted by defendant state that the information is based on the affiant's personal knowledge. Moreover, the content of each affidavit reveals that the affiant has personal knowledge of Ford-authorized manufacturers through employment positions. As the moving party, defendant has established that a non-Ford part was installed on plaintiff's vehicle and that this part is excluded from coverage under the express warranty. Also, defendant has shown that the damage to the vehicle was

**EUGENE TUCKER BUILDERS, INC. v. FORD MOTOR CO.**

[175 N.C. App. 151 (2005)]

caused by the non-Ford part. Brett Little stated in his affidavit that plaintiff experienced problems with the remote start system because the anti-theft bypass was not a Ford part. Plaintiff provides no argument or forecast of evidence on this point, and thus has not placed this fact in dispute. As plaintiff has not forecast evidence that his vehicle failed to conform to the express warranty, his claim is lacking in an essential element. *See Taylor*, 339 N.C. at 245, 451 S.E.2d at 622 (lessee must show that vehicle failed to conform to manufacturer's express warranty). Accordingly, we hold that the trial court properly granted summary judgment to defendant.

Affirmed.

Judge LEWIS concurs.

Judge HUDSON dissents.

HUDSON, Judge, dissenting.

Having carefully reviewed the affidavits submitted to the trial court, I do not agree that plaintiff has failed to forecast an issue of fact as to whether DEI was a Ford-authorized manufacturer. As the majority accurately notes, Mr. Rhyne's affidavit clearly states that "Mobil Environment installed the bypass device, which is a piece known as a 555F made by Directed Electronics, Inc., or DEI, also an authorized manufacturer of Ford Motor Company electronic systems." The majority rejects these assertions in the affidavit, on the basis that the affidavit does not show how Mr. Rhyne had personal knowledge of these facts. I believe that the additional statements in the affidavit and the documents attached, which show that Mr. Rhyne "was the Manager of the Charlotte, North Carolina office of Mobile Environment, Inc.," which company installed the parts referred to above, sufficiently showed a basis for his personal knowledge and created an issue of fact regarding whether DEI was a Ford-authorized manufacturer. Thus, I would reverse the grant of summary judgment on this basis, and I respectfully dissent.