JUANITA RICHARDSON AND ROBERT AND GLORIA GOWER, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, PLAINTIFFS v. BANK OF AMERICA, N.A. AND NATIONSCREDIT FINANCIAL SERVICES CORPORATION, DEFENDANTS

No. COA06-211

(Filed 17 April 2007)

## 1. Unfair Trade Practices— single premium credit insurance—loans of fifteen years or less

The trial court did not err by granting summary judgment for defendants on unfair and deceptive trade practices for claims involving single premium credit insurance for loans of 15 years or less. The sale of these loans was explicitly allowed by statute and it was undisputed that the Department of Insurance approved them. N.C.G.S. § 58-57-35(b).

## 2. Corporations— sale of credit insurance by subsidiary—overlapping officers—not sufficient for parent company liability

The trial court did not err by granting summary judgment for defendant Bank of America on claims arising from the sale of single premium credit insurance by its subsidiary, NationsCredit. It is undisputed that plaintiffs obtained their loans from NationsCredit; the mere fact that there were overlapping officers is insufficient to impose direct liability on Bank of America for NationsCredit's actions.

## 3. Corporations— sale of credit insurance by subsidiary—officer in both companies controlling subsidiary—not sufficient for parent company liability

The trial court did not err by granting summary judgment for defendant Bank of America on claims arising from the sale of single premium credit insurance by its subsidiary, NationsCredit. Although an officer of both companies controlled the day-to-day activities of NationsCredit and testified that his separate titles were of no import, plaintiffs did not show that any officer or director operated merely on behalf of Bank of America when operating NationsCredit.

## 4. Corporations— piercing corporate veil—numerous subsidiaries—not sufficient

Plaintiffs did not show excessive fragmentation of Bank of America's subsidiaries when attempting to pierce the corporate

veil because they produced no evidence other than that Bank of America had numerous subsidiaries. Plaintiffs did not demonstrate that any fragmentation was excessive or that it contributed to any domination of the subsidiary.

**5. Corporations— parent corporation liability—compliance with corporate formalities**

There was no evidence that NationsCredit did not comply with corporate formalities or that it was undercapitalized.

**6. Unfair Trade Practices— statute of limitations—credit insurance—not a continuous violation**

The trial court did not err by granting summary judgment for defendant on unfair and deceptive trade practice claims based on the statute of limitations in an action arising from defendant's sale of single premium credit insurance and the financing of the premium. These claims did not involve an installment contract, and were premised solely on defendant's actions before and at the closing, and accrued at the time of closing of plaintiffs' loans. Any violation of the UDTP Act was not continuous and N.C.G.S. § 75-8 did not extend the statute of limitations. .

**7. Appeal and Error; Judgments— failure to cite authority— argument abandoned—prejudment interest—effect of appeal**

Plaintiffs abandoned their argument concerning interest on an award by not citing authority for their proposition. Moreover, they were partly to blame for any delay in the entry of money judgments because the trial judge, after ruling that some plaintiffs were entitled to damages, certified all of its decisions for immediate review, delayed further action until the resolution of appeals, and plaintiffs appealed some of the court's decisions.

**8. Pleadings— affirmative defense—raised only in summary judgment memo—waiver**

Choice-of-law federal preemption is an affirmative defense. Defendants here waived that defense by not raising it in their answer or in their motions for summary judgment, but only in their memorandum in response to plaintiffs' motion for partial summary judgment. Plaintiffs did not have the opportunity to argue and present evidence on this issue.

**9. Insurance— single premium credit insurance—unfair trade practice—summary judgment**

The trial court did not err by granting summary judgment for plaintiffs and determining, on the undisputed facts, that defendants committed an unfair and deceptive trade practice in the sale of unapproved single premium credit insurance. It is undisputed that defendants purported to sell the policies pursuant to Article 57 rather than Article 58 of Chapter 58, and that the policies sold to plaintiffs having loans greater than 15 years were not approved by the Department of Insurance. Whether similar insurance could have been sold under a different section of the statutes is not an issue of material fact.

**10. Unfair Trade Practices— single premium credit insurance—governing statutes regulatory—product retained, but valueless**

The sale of single premium credit insurance on a form not approved by the Department of Insurance in association with loans having terms greater than 15 years was an unfair or deceptive act. It is immaterial that the insurance statutes are regulatory. The argument that there were no damages because plaintiffs retained the insurance product wrongly supposes that the product had some value.

**11. Insurance— single premium credit insurance—good faith and fair dealing—allegation that contract breached—not required**

Defendant NationsCredit breached its duty of good faith and fair dealing as a matter of law in the sale of unlawful single premium credit insurance policies associated with loans of more than 15 years.

**12. Damages and Remedies— punitive damages—willful or wanton activity—sale of single premium credit insurance**

Plaintiffs proved sufficient facts establishing willful or wanton tortious activity for a jury trial on punitive damages on its claim against NationsCredit for the sale of single premium credit insurance.

**13. Class Actions— single premium credit insurance—varying amounts of damages—certification**

The trial court did not abuse its discretion by certifying a class in an action involving single premium credit insurance. The

RICHARDSON v. BANK OF AM., N.A.

[182 N.C. App. 531 (2007)]

fact that plaintiffs might be entitled to varying amounts of damages did not preclude class certification.

**14. Unfair Trade Practices— single premium credit insurance—calculation of damages—retained insurance without value**

The trial court properly held that the measure of damages in an unfair and deceptive trade practices claim arising from the sale of single premium credit insurance for loans less than 15 years should include the premium, interest, fees, and points associated with the purchase and financing of the insurance. Defendants were not entitled to reduce the damages by the amount attributable to the insurance because that insurance was void as against public policy and did not have any value.

**15. Unfair Trade Practices— single premium credit insurance—calculation of damages—refunds**

The trial court did not err in an unfair and deceptive trade practices claim by first trebling damages and then deducting refunds for cancelled insurance that was void as against public policy. The court's decision facilitates the remedial and punitive purpose of Chapter 75 and encourages settlement.

Appeal by Plaintiffs and Defendants from orders entered 10 March 2005, 19 April 2005, 23 June 2005, 27 July 2005, and 12 October 2005; appeal by Plaintiffs from orders entered 15 April 2003, 8 October 2004, 16 November 2004, 10 March 2005, 19 April 2005, and 16 June 2005; and appeal by Defendants from orders entered 14 June 2004, 19 April 2005, and 16 June 2005 by Judge Catherine C. Eagles in Superior Court, Durham County. Heard in the Court of Appeals 15 November 2006.

*Jones Martin Parris & Tessener Law Offices, P.L.L.C., by John Alan Jones and G. Christopher Olson, for Plaintiffs.*

*Kennedy Covington Lobdell & Hickman, L.L.P., by John H. Culver III and Amy Pritchard Williams, for Defendants.*

McGEE, Judge.

Juanita Richardson, Robert Gower, Gloria Gower, and Joyce M. Smith, on behalf of themselves and all others similarly situated (collectively Plaintiffs), filed this action on 10 May 2002 against, *inter alia*, Bank of America, N.A. (Bank of America) and its wholly-owned

**RICHARDSON v. BANK OF AM., N.A.**

[182 N.C. App. 531 (2007)]

subsidiary, NationsCredit Financial Services Corporation (Nations-Credit) (collectively Defendants).[1] Plaintiffs alleged claims for unfair and deceptive trade practices (UDTP) under N.C. Gen. Stat. § 75-1.1, unjust enrichment, breach of the duty of good faith and fair dealing, and punitive damages. Plaintiffs' claims arose out of the alleged sale by Defendants to Plaintiffs of single-premium credit insurance (SPCI) in association with mortgage loans.

Plaintiffs filed their first amended complaint on 13 August 2002. Plaintiffs' first amended complaint alleged claims against only Bank of America and NationsCredit. Plaintiffs again alleged claims for UDTP, unjust enrichment, breach of the duty of good faith and fair dealing, and punitive damages.

Defendants filed their answer and conditional counterclaim on 19 August 2002. Defendants asserted numerous defenses, including the statute of limitations. Defendants also asserted a counterclaim against those Plaintiffs who were in default and/or who owed deficiency balances, to become effective if and when a class was certified. Plaintiffs filed an answer on 5 September 2002 asserting several defenses to Defendants' conditional counterclaim.

Pursuant to Rule 2.1(a) of the General Rules of Practice, the case was designated as an exceptional case on 14 November 2002. Superior Court Judge Catherine C. Eagles was assigned to the case on 22 November 2002. The parties then engaged in extensive discovery.

Defendants removed the action to the United States District Court for the Middle District of North Carolina on 20 June 2003, and that Court granted Plaintiffs' motion to remand the case back to the trial court on 10 March 2004. The trial court issued a class certification order on 14 June 2004, and defined the class as follows:

North Carolina borrowers who obtained a loan before July 1, 2000, from . . . NationsCredit in the State of North Carolina, whose loans are secured or were secured by real property located in North Carolina, and who were sold single-premium credit life, disability, accident and health, or involuntary unemployment insurance with a term less than that of their loan, and who have not made a claim under any such credit insurance policy and who made payments on their loan at any point after May 10, 1998.

---

1. The trial court dismissed the individual claims of Joyce M. Smith with prejudice and removed her as a class representative on 16 June 2005.

The trial court entered a supplementary scheduling order on 23 July 2004, ordering, *inter alia*, that discovery should be completed by 25 October 2004 and that the trial date be set for 4 April 2005. Discovery continued, and the trial court entered a comprehensive order on 23 November 2004 resolving all pending non-dispositive motions and revising and restating scheduling requirements. Defendants appealed this order on 21 December 2004, but Defendants subsequently dismissed their appeal.

The parties filed motions for summary judgment and partial summary judgment, along with memoranda in support of those motions, dated 19 January 2005. In a memorandum in response to Plaintiffs' motion for partial summary judgment, filed 31 January 2005, Defendants first raised the defense of federal preemption. The parties had also filed a joint statement of undisputed facts and proposed issues on 20 January 2005. In that statement, the parties agreed that the following facts were undisputed. NationsCredit sold Juanita Richardson and Robert and Gloria Gower SPCI on twenty-five year loans. The coverage term for the SPCI was ten years. NationsCredit loan officers sold the SPCI pursuant to agreements between NationsCredit and several insurance companies.

It was also undisputed that "[w]ith [SPCI], the credit insurance premium was financed over the term of the loan. The premium for [SPCI] was calculated based upon the amount financed. The amount financed would include any charges for origination fees, points, loan discount fees, and other closing costs." It was further undisputed that NationsCredit's sales of SPCI were "in or affecting commerce."

The parties further agreed that, at the time of the closing of their loans, Plaintiffs received and signed numerous documents and disclosure statements. Plaintiffs signed and received a statement that informed them that NationsCredit expected to profit from the sale of any insurance.

It was also undisputed that North Carolina allowed the sale of truncated credit insurance in connection with closed-end real estate loans. The SPCI sold by NationsCredit to Plaintiffs with loans of fifteen years or less was approved by the Department of Insurance. However, the SPCI sold to Plaintiffs having loans greater than fifteen years was not approved by the Department of Insurance.

The trial court entered an order on 10 March 2005 addressing parts of the 19 January 2005 motions for summary judgment. The trial

court ruled that Defendants had waived any right to assert federal preemption as a defense by failing to assert the defense in their answer. The trial court also determined that the General Assembly

> explicitly allowed the sale and implicitly allowed the financing of truncated single premium credit insurance in connection with real estate loans up to and including 15 years' duration and set the maximum premium rates for this insurance. Therefore, the mere sale and financing of these products at the maximum premium rate explicitly allowed by statute, cannot, by itself, be a[] UDTP and cannot be a violation of any duty the Defendants had of good faith and fair dealing.

The trial court also entered an order on 19 April 2005 regarding the statute of limitations on Plaintiffs' UDTP claims. The trial court noted that it was undisputed that Plaintiffs' UDTP claims were based on Defendants' conduct before and during closing, and were not based upon Defendants' conduct after closing. The trial court concluded that the statute of limitations for Plaintiffs' UDTP claims "began to run at the time of the loan closing when Class members signed and received copies of closing documents disclosing the sale of SPCI, the amount of the premium for the SPCI, its term, and the total amount financed at closing." The trial court also determined that "[t]he fact that the financing of SPCI resulted in higher costs to the borrower directly attributable to the purchase of the SPCI and which higher costs would be paid for over the life of the loan is not material to the statute of limitations issue." The trial court therefore dismissed the UDTP claims of those Plaintiffs whose loans closed before 10 May 1998, or four years prior to the filing of the complaint.

The trial court filed an order regarding summary judgment on liability on 23 June 2005. The trial court determined that NationsCredit committed a UDTP as a matter of law as to those Plaintiffs who were sold SPCI in connection with loans greater than fifteen years. The trial court also ruled that NationsCredit breached the duty of good faith and fair dealing with respect to those Plaintiffs with loans greater than fifteen years. The trial court further ruled that "it was [a] UDTP to tell a customer that there was a 'thirty day free look' as to SPCI when in fact if the SPCI was cancelled within the first 30 days the customer would pay increased costs[.]" However, as to all other UDTP and breach of the duty of good faith and fair dealing liability issues, the trial court ruled in favor of Defendants. The trial court entered summary judgment accordingly.

The trial court entered an order regarding the method and procedure for calculating damages on 12 October 2005. With respect to Plaintiffs' remaining UDTP claims for the sale of SPCI with loans greater than fifteen years, the trial court held that the damages would be determined by adding the premium, interest, points, and fees associated with the purchase and financing of SPCI, and trebling that amount. Defendants argued that Plaintiffs should not be entitled to recover the entire premium amount because Plaintiffs received the benefit of insurance coverage. However, the trial court held that the SPCI sold to Plaintiffs with loans greater than fifteen years was an illegally sold insurance product and, therefore, the SPCI had no value that would reduce the amount of damages awarded to Plaintiffs. The trial court also ruled that any refund received by those Plaintiffs who cancelled their insurance policies should be deducted from any damages those Plaintiffs received. However, the trial court ruled that such refunds should be deducted after damages were trebled, rather than before. The trial court then established a process for assessing compensatory damages.

The trial court next entered an order on 12 October 2005 regarding summary judgment motions concerning Bank of America's liability and punitive damages. The trial court ruled that the evidence was insufficient to support the direct liability of Bank of America for any of Plaintiffs' claims. The trial court also ruled the evidence was insufficient to pierce the corporate veil and hold Bank of America indirectly liable for the acts of NationsCredit. Therefore, the trial court dismissed all claims against Bank of America. In that same order, the trial court ruled that the evidence was sufficient to allow a jury determination as to whether NationsCredit was liable for punitive damages on Plaintiffs' remaining claims for breach of the duty of good faith and fair dealing. Therefore, the trial court denied Plaintiffs' and Defendants' motions for summary judgment as to the class claim for punitive damages.

The trial court then issued an order certifying the case for immediate appeal pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b). The trial court determined there was no just reason to delay appeal of its numerous orders and further ruled that immediate appeal and review would promote judicial economy.

Plaintiffs filed their notice of appeal from twelve orders of the trial court on 9 November 2005. NationsCredit also filed its notice of appeal from ten orders of the trial court on 9 November 2005. Bank

of America filed its notice of appeal from ten orders of the trial court on 21 November 2005.

## Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2005). The party who moves for summary judgment has the burden of "establishing the lack of any triable issue of fact." *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985). This burden may be met by "proving that an essential element of the opposing party's claim is nonexistent, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim[.]" *Collingwood v. G.E. Real Estate Equities*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989). "[T]he standard of review on appeal from summary judgment is whether there is any genuine issue of material fact and whether the moving party is entitled to a judgment as a matter of law." *Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733, 504 S.E.2d 574, 577 (1998). We review the evidence in the light most favorable to the nonmoving party. *Id.*

## Plaintiffs' Appeal

### I.

**[1]** Plaintiffs argue the trial court erred by granting summary judgment for Defendants on Plaintiffs' claims involving loans with terms of fifteen years or less. Although the trial court granted summary judgment for Defendants on Plaintiffs' claims of UDTP and breach of the duty of good faith and fair dealing, Plaintiffs limit their argument to the summary judgment entered for Defendants on Plaintiffs' UDTP claims. Accordingly, Plaintiffs abandoned any claim of error as to summary judgment for Defendants on Plaintiffs' claims for breach of the duty of good faith and fair dealing. *See* N.C.R. App. P. 28(b)(6).

N.C. Gen. Stat. § 75-1.1(a) (2005) provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-16 (2005) creates a cause of action to redress injuries resulting from violations of Chapter 75 of the General Statutes and provides that any damages recovered shall be trebled. These two statutes establish a private cause of action for consumers. *Gray v.*

*N.C. Ins. Underwriting Ass'n,* 352 N.C. 61, 68, 529 S.E.2d 676, 681, *reh'g denied,* 352 N.C. 599, 544 S.E.2d 771 (2000).

"To prevail on a claim of unfair and deceptive trade practices, a plaintiff must show: (1) [the] defendants committed an unfair or deceptive act or practice; (2) in or affecting commerce; and (3) that [the] plaintiff was injured thereby." *First Atl. Mgmt. Corp. v. Dunlea Realty Co.,* 131 N.C. App. 242, 252, 507 S.E.2d 56, 63 (1998). "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Marshall v. Miller,* 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). "[A] practice is deceptive if it has the capacity or tendency to deceive; proof of actual deception is not required." *Id.* "[U]nder N.C.G.S. § 75-1.1, it is a question for the jury as to whether [a party] committed the alleged acts, and then it is a question of law for the court as to whether these proven facts constitute an unfair or deceptive trade practice." *United Laboratories, Inc. v. Kuykendall,* 322 N.C. 643, 664, 370 S.E.2d 375, 389 (1988).

In *Gray,* our Supreme Court recognized that "where a party engages in conduct manifesting an inequitable assertion of power or position, such conduct constitutes an unfair act or practice." *Gray,* 352 N.C. at 68, 529 S.E.2d at 681. In the present case, Plaintiffs argue that, based upon *Gray,* Defendants committed a UDTP by "inequitably assert[ing] their superior power while dealing with a subset of the population known to be necessitous and less sophisticated than borrowers in the prime market." However, this was not the basis for UDTP liability argued by Plaintiffs before the trial court.

In its order regarding summary judgment on liability, the trial court noted that it had earlier ordered Plaintiffs to "state specifically and clearly which facts they contend would, if established, constitute [a] UDTP[.]" Plaintiffs contended the following facts established that Defendants committed a UDTP as a matter of law with respect to borrowers having loans with terms of fifteen years or less:

AGREED FACT 26: The NationsCredit loan officers who sold credit insurance to NationsCredit borrowers in North Carolina were licensed insurance agents. The Agency Agreement between American Bankers Life Assurance Company of Florida and NationsCredit Insurance Agency, the Administrative Accounting Agreement between Protective Life Insurance Company and NationsCredit Insurance Agency, and the Administrative Agree-

ment between Balboa Life Insurance Company and NationsCredit Insurance Agency provide that NationsCredit is responsible for obtaining the licenses and other authorizations and appointments necessary to transact business under those agreements.

UNDISPUTED FACT 7: The Defendant NationsCredit sought and dealt with credit insurers that would pay the most compensation to Defendant NationsCredit without regard for the cost of credit insurance to NationsCredit borrowers.

UNDISPUTED FACT 10: The Defendant NationsCredit gave no serious consideration to, and did not investigate the possibility of, selling monthly pay credit insurance products in connection with the loans at issue because such products resulted in lower profits to NationsCredit.

UNDISPUTED FACT 11: In the long run for borrowers and taking into account interest and fees/points paid by borrowers, monthly pay credit insurance was less expensive than single premium credit insurance providing the same amount of benefits.

UNDISPUTED FACT 12: If NationsCredit had seriously been interested in the possibility of selling monthly pay credit insurance to its borrowers, it could have found an insurance company to write and seek regulatory approval for such coverage.

AGREED FACT 30: NationsCredit's credit insurance sales were in or affecting commerce.

The trial court determined that these facts did not constitute a UDTP as a matter of law. The trial court determined that

[t]he product sold was explicitly allowed to be sold by the North Carolina [General Assembly], and the financing of that product was implicitly allowed by the [General Assembly]. See discussion in Court's Order Signed March 3, 2005, entitled "Order Addressing Parts of the 1/19/05 Motions for Summary Judgment," pages 7-10. For those class members whose loans were for a period up to and including 15 years, the policies were approved by the Department of Insurance and there is no claim at this stage that the premiums charged exceeded the maximum rate allowed by law.

The trial court also stated the following:

That there was a product available which would have been less expensive for all or almost all of NationsCredit's customers;

that NationsCredit did not seriously consider selling it; and that this alternative product would have resulted in lower profits for NationsCredit does not make the sale and financing of SPCI a[] [UDTP].

In the trial court's earlier order addressing parts of the 19 January 2005 motions for summary judgment, the trial court concluded that the General Assembly

> explicitly allowed the sale and implicitly allowed the financing of truncated single premium credit insurance in connection with real estate loans up to and including 15 years' duration and set the maximum premium rates for this insurance. Therefore, the mere sale and financing of these products at the maximum premium rate explicitly allowed by statute, cannot, by itself, be [a] UDTP and cannot be a violation of any duty the Defendants had of good faith and fair dealing.

For the reasons stated below, we hold that the trial court correctly concluded that the sale of SPCI was explicitly allowed by statute.

Plaintiffs also argue the fact that the sale and financing of SPCI was implicitly allowed by the General Assembly did not confer blanket authorization to sell SPCI under any circumstances. Plaintiffs cite *Country Club of Johnston Cty., Inc. v. U.S. Fidelity & Guar. Co.*, 150 N.C. App. 231, 243-45, 563 S.E.2d 269, 277-78 (2002), where our Court held that a party need not prove a violation of the insurance statutes to prove a violation of N.C.G.S. § 75-1.1. However, the trial court in the present case did not hold that the sale of SPCI was implicitly allowed by the General Assembly. Rather, the trial court held that the sale of SPCI on loans of fifteen years or less was explicitly allowed by the insurance statutes.

It was undisputed that the SPCI sold by NationsCredit to Plaintiffs with loans of fifteen years or less was approved by the Department of Insurance. It was also undisputed that North Carolina allowed the sale of truncated credit insurance in connection with closed-end real estate loans. Moreover, N.C. Gen. Stat. § 58-57-35(b) provides:

> The premium or cost of credit life, disability, or unemployment insurance, when written by or through any lender or other creditor, its affiliate, associate or subsidiary shall not be deemed as interest or charges or consideration or an amount in excess of

permitted charges in connection with the loan or credit transaction and *any gain or advantage to any lender or other creditor,* its affiliate, associate or subsidiary, *arising out of the premium or commission or dividend from the sale or provision of such insurance shall not be deemed a violation of any other law, general or special, civil or criminal, of this State, or of any rule, regulation or order issued by any regulatory authority of this State.*

N.C. Gen. Stat. § 58-57-35(b) (2005) (emphasis added). This statute bars claims that seek to recover premiums associated with the sale of SPCI under Chapter 58. We hold that because the credit insurance sold to Plaintiffs with loans of fifteen years or less was authorized by the Department of Insurance, and because N.C.G.S. § 58-57-35(b) provides that any gain to a lender from the sale of SPCI shall not be a violation of any other law, the trial court did not err by granting Defendants' motion for summary judgment. *See Pinney v. State Farm Mut. Ins. Co.,* 146 N.C. App. 248, 256-57, 552 S.E.2d 186, 192 (2001), *disc. review denied,* 356 N.C. 438, 572 S.E.2d 788 (2002) (holding that providing UM coverage without also providing UIM coverage could not amount to a UDTP because N.C. Gen. Stat. § 20-279.21(b)(4) specifically authorized drivers to obtain UM coverage alone, or combined with UIM coverage, and the statute required only UM coverage to be offered "to insureds whose policies reflect only the minimum statutory liability coverage.").

Relying on *McMurray v. Surety Federal Savings & Loan Assoc.,* 82 N.C. App. 729, 348 S.E.2d 162 (1986), *cert. denied,* 318 N.C. 695, 351 S.E.2d 748 (1987), Plaintiffs argue that North Carolina law imposes a heightened duty on a bank when the subject of credit insurance is broached. In *McMurray,* one borrower, who had credit life insurance, transferred his interest in real property to a co-borrower who did not have credit life insurance. *Id.* at 729, 348 S.E.2d at 163. The plaintiffs argued that the loan officer in charge of the loan transfer was under a legal duty to offer credit life insurance to the transferee. *Id.* at 730, 348 S.E.2d at 164. Specifically, the plaintiffs in *McMurray* relied upon an Ohio case, *Stone v. Davis,* 419 N.E.2d 1094 (Ohio 1981), *cert. denied, Cardinal Federal Savings & Loan Association v. Davis,* 454 U.S. 1081, 70 L. Ed. 2d 614 (1981), where the Supreme Court of Ohio held that " 'in broaching the subject of mortgage insurance to a loan customer, a lending institution has a duty to advise the customer as to how this insurance may be procured.' " *McMurray,* 82 N.C. App. at 732, 348 S.E.2d at 164-65 (quot-

ing *Stone*, 419 N.E.2d at 1099). The Supreme Court of Ohio based its holding on a finding that a bank acts as a fiduciary when the bank broaches the subject of mortgage insurance. *Id.* at 732, 348 S.E.2d at 165 (citing *Stone*, 419 N.E.2d at 1098).

However, in *McMurray*, our Court recognized that the lender never broached the subject of credit life insurance at the time of the loan transfer. *Id.* Our Court held that a lender does not have a duty to disclose the availability of or procedures for attaining credit life insurance at a loan transfer when the lender did not broach the subject and such insurance was never requested. *Id.* at 733, 348 S.E.2d at 165.

Plaintiffs in the present case argue that Defendants did broach the subject of credit insurance with Plaintiffs. Therefore, Plaintiffs argue, Defendants owed a heightened duty to Plaintiffs. While NationsCredit did broach the subject of credit insurance with Plaintiffs, we first note that *Stone* is not the law in North Carolina. Moreover, under *Stone*, the lender only has a duty to explain how to procure credit insurance where the lender broaches the subject. *Stone*, 419 N.E.2d at 1099. Neither the Supreme Court of Ohio in *Stone*, nor our Court in *McMurray*, held that a lender has a duty to offer alternative credit insurance products or to offer credit insurance at a certain price. Therefore, *McMurray* is inapplicable to the present case.

Relying upon *Matter of Dickson*, 432 F. Supp. 752 (W.D.N.C. 1977), Plaintiffs also argue Defendants owed Plaintiffs a fiduciary duty, which Defendants breached. In *Dickson*, the defendant charged the plaintiffs a premium that was approximately twice the "premium considered adequate by the North Carolina Insurance Commissioner, and received a 25% rebate as a commission." *Id.* at 760-61. The court held that because the defendant was a subsidiary of a bank holding company, it was a fiduciary of the plaintiffs for purposes of the sale of credit life insurance. *Id.* at 760. Therefore, the court held that the defendant committed a UDTP by charging inflated premiums and retaining a 25% commission without disclosing those facts to the plaintiffs. *Id.* at 761.

We note that we are not bound by *Dickson*. *See Shepard v. Ocwen Fed. Bank, FSB*, 172 N.C. App. 475, 479, 617 S.E.2d 61, 64 (2005), *aff'd*, 361 N.C. 137, 638 S.E.2d 197 (2006), *reh'g denied*, 361 N.C. 371, 643 S.E.2d 404 (2007) (recognizing that "[a]lthough we are not bound by federal case law, we may find their analysis and holdings persua-

sive."). Moreover, *Dickson* is distinguishable. In the present case, unlike in *Dickson*, it is undisputed that NationsCredit disclosed to Plaintiffs that it would make a profit from the sale of SPCI. Also, as we have already determined, the sale of SPCI on loans of fifteen years or less was explicitly authorized by the insurance statutes. Therefore, *Dickson* does not apply to the present case.

In support of their argument that Defendants owed Plaintiffs a fiduciary duty, Plaintiffs also rely upon introductory remarks to a federal regulation, Regulation Y, 12 C.F.R. § 222.4(a)(9) (1971). This regulation authorized banks to sell credit insurance under certain circumstances. The introductory remarks read as follows:

> In connection with its action on this matter, the Board expressed the expectation that any holding company or subsidiary that acts as an insurance agent on the basis of the new regulatory provision will exercise a fiduciary responsibility—that is, by making its best effort to obtain the insurance at the lowest practicable cost to the customer.

Nonbanking Activities, 36 Fed. Reg. 15525-26 (Aug. 17, 1971) (to be codified at 12 C.F.R. pt. 222). However, the United States Court of Appeals for the District of Columbia Circuit, has stated that

> "[t]he real dividing point between regulations and general statements of policy is publication in the Code of Federal Regulations . . . ." *Brock v. Cathedral Bluffs Shale Oil Co.*, 796 F.2d 533, 539 (D.C. Cir. 1986). Publication in the Code is not just a matter of agency convention. The regulations governing the Code provide that it shall contain "each Federal regulation of general applicability and legal effect." 1 C.F.R. § 8.1(a) (1996). *See Brock*, 796 F.2d at 539.

*American Portland Cement Alliance v. E.P.A.*, 101 F.3d 772, 776 (D.C. Cir. 1996).

In the present case, the introductory remarks of the Federal Reserve Board were never adopted as a regulation and were never published in the Code of Federal Regulations, and therefore never had the force of law. Therefore, the introductory remarks to Regulation Y do not provide a basis for a finding that Defendants owed Plaintiffs a fiduciary duty. We hold the trial court did not err by granting Defendants' summary judgment motion on the UDTP claims of Plaintiffs having loans of fifteen years or less.

**RICHARDSON v. BANK OF AM., N.A.**

[182 N.C. App. 531 (2007)]

## II.

**[2]** Plaintiffs next argue the trial court erred by granting Bank of America's motion for summary judgment. Plaintiffs argue the trial court erred by failing to enter summary judgment for Plaintiffs on their UDTP and good faith and fair dealing claims against Bank of America. However, Plaintiffs argue that even if they were not entitled to summary judgment, genuine issues of material fact existed as to Bank of America's liability, precluding summary judgment for Bank of America.

Plaintiffs argue the undisputed facts showed that Bank of America was directly liable, or at least indirectly liable, for the sale of SPCI to Plaintiffs. "[A] parent 'corporation is [itself] responsible for the wrongs committed by its agents in the course of its business[.]' " *United States v. Bestfoods*, 524 U.S. 51, 65, 141 L. Ed. 2d 43, 58 (1998) (quoting *United Mine Workers of America v. Coronado Coal Co.*, 259 U.S. 344, 395, 66 L. Ed. 2d 975, 989 (1922)). Additionally, "[i]t is well recognized that courts will disregard the corporate form or 'pierce the corporate veil,' and extend liability for corporate obligations beyond the confines of a corporation's separate entity, whenever necessary to prevent fraud or to achieve equity." *Glenn v. Wagner*, 313 N.C. 450, 454, 329 S.E.2d 326, 330 (1985).

In North Carolina, courts use the "instrumentality rule" to pierce the corporate veil. *Id.* Our Supreme Court has stated the instrumentality rule as follows:

> [If] the corporation is so operated that it is a mere instrumentality or *alter ego* of the sole or dominant shareholder and a shield for his activities in violation of the declared public policy or statute of the State, the corporate entity will be disregarded and the corporation and the shareholder treated as one and the same person, it being immaterial whether the sole or dominant shareholder is an individual or another corporation.

*Henderson v. Finance Co.*, 273 N.C. 253, 260, 160 S.E.2d 39, 44 (1968). In order to prevail under the instrumentality rule, a party must prove three elements:

> "(1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and

(2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of [the] plaintiff's legal rights; and

(3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of."

*Glenn*, 313 N.C. at 454-55, 329 S.E.2d at 330 (quoting *Acceptance Corp. v. Spencer*, 268 N.C. 1, 9, 149 S.E.2d 570, 576 (1966)). Our Courts have looked to the following factors when considering whether to pierce the corporate veil under the instrumentality rule: "1. Inadequate capitalization ('thin corporation'). 2. Non-compliance with corporate formalities. 3. Complete domination and control of the corporation so that it has no independent identity. 4. Excessive fragmentation of a single enterprise into separate corporations." *Id.* at 455, 329 S.E.2d at 330-31 (internal citations omitted).

In the present case, Plaintiffs argue that Bank of America was directly liable because there were overlapping officers between Bank of America and NationsCredit and some NationsCredit employees received their paychecks from Bank of America. However, in *Bestfoods*, the United States Supreme Court recognized that a parent corporation is generally not liable for the acts of its subsidiaries. *Bestfoods*, 524 U.S. at 61, 141 L. Ed. 2d at 55-56. The Court also recognized that because there is a presumption that corporate officers act on behalf of the subsidiary alone when making decisions regarding that entity, "it cannot be enough to establish liability . . . that dual officers and directors made policy decisions and supervised activities at the facility." *Id.* at 69-70, 141 L. Ed. 2d at 61 (citations omitted). The Court further stated: "Indeed, if the evidence of common corporate personnel acting at management and directorial levels were enough to support a finding of a parent corporation's direct operator liability under CERCLA, then the possibility of resort to veil piercing to establish indirect, derivative liability for the subsidiary's violations would be academic." *Id.* at 70, 141 L. Ed. 2d at 61.

In the present case, it is undisputed that Plaintiffs obtained their loans from NationsCredit. Bank of America was not a party to any of the loan transactions. As noted above, the mere fact that there were overlapping officers between Bank of America and NationsCredit is insufficient to impose direct liability on Bank of America for NationsCredit's actions. See *id.* at 69-70, 141 L. Ed. 2d at 61. Moreover, even though some NationsCredit employees received their pay-

checks from Bank of America, the parties stipulated that NationsCredit loan officers sold the SPCI at issue pursuant to agreements between NationsCredit and several insurance companies. Plaintiffs have not produced anything further to support their direct liability theory, and we hold the trial court did not err by granting summary judgment for Bank of America on this theory.

[3] Plaintiffs also argue that Bank of America is indirectly liable for NationsCredit's actions under the instrumentality rule. Plaintiffs argue that the undisputed evidence demonstrated that John Hickey, an officer of both Bank of America and NationsCredit, controlled the day-to-day operations of NationsCredit. To show that Bank of America dominated NationsCredit's operations, Plaintiffs rely upon John Hickey's testimony that his separate titles at Bank of America and NationsCredit simply existed on paper and were of no import. However, this evidence is insufficient to show the complete domination of finances, policy, and business practices that is necessary under the instrumentality rule. Plaintiffs have not shown evidence that any officer or director operated merely on behalf of Bank of America, rather than NationsCredit, when operating NationsCredit.

[4] Plaintiffs also argue that there was excessive fragmentation of Bank of America's subsidiaries. However, Plaintiffs do not rely upon evidence other than the fact that Bank of America had numerous subsidiaries which were organized under the Consumer Finance Group. Plaintiffs have not demonstrated that any fragmentation was excessive nor that it contributed to any domination of NationsCredit by Bank of America.

[5] Furthermore, there is no evidence that NationsCredit did not comply with corporate formalities or that NationsCredit was undercapitalized. In fact, it appears that as of 31 December 2000, NationsCredit had a net worth of $953 million dollars, and as of 5 August 2005, NationsCredit had a net worth of approximately $1.3 billion dollars. We hold the trial court did not err by granting summary judgment to Bank of America and we overrule Plaintiffs' assignments of error grouped under this argument.

Plaintiffs further argue that the trial court erred by failing to determine Plaintiffs' Rule 56(f) request outlining the critical discovery Plaintiffs needed to establish that Bank of America was subject to liability. However, Plaintiffs' Rule 56(f) request was limited to issues regarding punitive damages and did not refer to discovery related to Bank of America's liability. This argument lacks merit.

**RICHARDSON v. BANK OF AM., N.A.**

[182 N.C. App. 531 (2007)]

### III.

**[6]** Plaintiffs argue the trial court erred by granting summary judgment for Defendants on the ground that the statute of limitations barred the UDTP claims of those Plaintiffs whose loans were originated prior to 10 May 1998. Plaintiffs argue that N.C. Gen. Stat. § 75-8 extended the statute of limitations in the present case because the alleged violations of the UDTP act were continuous in nature. Specifically, Plaintiffs argue their UDTP claims were continuous in nature because the financing of their SPCI premiums caused Plaintiffs to pay higher costs over the lives of their loans.

The statute of limitations applicable to UDTP claims is four years under N.C. Gen. Stat. § 75-16.2 (2005). However, N.C. Gen. Stat. § 75-8 (2005) provides that "[w]here the things prohibited in this Chapter are continuous, then in such event, after the first violation of any of the provisions hereof, each week that the violation of such provision shall continue shall be a separate offense." Plaintiffs argue that *Thomas v. Petro-Wash, Inc.*, 429 F. Supp. 808 (M.D.N.C. 1977), which interpreted N.C.G.S. § 75-8, is analogous. In *Thomas*, the plaintiffs owned a car wash and gasoline station and entered into a lease-lease-back agreement with the defendants in 1968. *Id.* at 811. The plaintiffs filed a complaint against the defendants on 9 September 1974, alleging the defendants conspired, by the use of the lease-leaseback agreement, "to tie the sale of gasoline and financial assistance to the sale of certain car wash equipment[]" in violation of federal and North Carolina antitrust laws. *Id.* The defendants moved for summary judgment on the ground that the plaintiffs' claims were barred by the applicable statutes of limitation. *Id.*

In *Thomas*, the parties agreed on the general law that a cause of action accrues when a party commits an act that injures another party's business. *Id.* However, the defendants argued that the signing of the lease-leaseback agreement in 1968 was the last overt act connecting them with the alleged conspiracy, and therefore the plaintiffs' claims accrued more than four years before the plaintiffs filed their complaint. *Id.* The plaintiffs argued the defendants were involved in a continuing conspiracy and that each sale of gasoline under the lease-leaseback agreement constituted an overt act committed pursuant to that conspiracy. *Id.* at 811-12. The Court agreed with the plaintiffs and concluded that the statute of limitations began to run from the date of each sale of gasoline. *Id.* at 812. The Court also applied its reasoning to the plaintiffs' claims for treble damages under the North Carolina antitrust laws. *Id.* at 813. Because the plain-

tiffs alleged continuing violations of North Carolina antitrust laws, and because N.C.G.S. § 75-8 extended the statute of limitations for continuing violations, the plaintiffs' claims were not time barred. *Id.*

*Thomas* is distinguishable from the case before us. Unlike in *Thomas*, Plaintiffs did not allege any overt acts by Defendants after Defendants sold Plaintiffs SPCI at their loan closings. In fact, it is undisputed that Plaintiffs' UDTP claims were based on Defendants' conduct before and during closing and were not based upon Defendants' conduct after closing.

Plaintiffs also rely upon *U.S. Leasing Corp. v. Everett, Creech, Hancock and Herzig*, 88 N.C. App. 418, 363 S.E.2d 665, *disc. review denied*, 322 N.C. 329, 369 S.E.2d 364 (1988), where the plaintiff filed a breach of contract action against the defendants to recover the balance due under a lease of office equipment. *Id.* at 420, 363 S.E.2d at 666. Our Court recognized that where an obligation is payable in installments, "the statute of limitations runs against each installment individually from the time it becomes due[.]" *Id.* at 426, 363 S.E.2d at 669. Because the lease was payable in monthly installments, the statute of limitations had not run against those payments which had been due in the three years prior to the filing of the complaint. *Id.*

*U.S. Leasing Corp.* is distinguishable because it did not involve a claim for UDTP and did not interpret N.C.G.S. § 75-8. Moreover, *U.S. Leasing Corp.* does not apply because it dealt with the unique scenario presented by a breach of an installment contract. In the present case, Plaintiffs' UDTP claims did not involve an installment contract. Rather, Plaintiffs' UDTP claims were solely premised on Defendants' actions before and at the closing of Plaintiffs' loans. We therefore hold that Plaintiffs' UDTP claims accrued at the closing of their loans, and N.C.G.S. § 75-8 did not extend the statute of limitations because any violation of the UDTP Act was not continuous. *See Shepard v. Ocwen Federal Bank, FSB*, 361 N.C. 137, 139-42, 638 S.E.2d 197, 199-200 (2006) (holding that the plaintiffs' usury and UDTP claims arising out of the payment of a loan origination fee accrued at the loan closing when such fee was paid and received at closing). We overrule Plaintiffs' assignments of error grouped under this argument.

IV.

[7] Plaintiffs argue the trial court erred by failing to enter money judgments in favor of those class members the trial court held were

entitled to damages. Plaintiffs argue that a successful chapter 75 claimant is entitled to pre-judgment interest on the trebled damage award from the date liability attached. Therefore, Plaintiffs contend that "this Court should specify that post-judgment interest shall be allowed on the entire damages award from the date of entry of the final liability and damages rulings on 10 October 2005."

However, Plaintiffs cite no authority for this proposition and we therefore deem Plaintiffs' assignments of error abandoned. *See* N.C.R. App. P. 28(b)(6). Furthermore, Plaintiffs are partly to blame for any delay in entry of money judgments. The trial court ruled that certain Plaintiffs were entitled to recover compensatory damages as a result of their UDTP claims. The trial court also set forth the measure of damages which would be determined in subsequent proceedings. However, the trial court then certified all of its decisions for immediate interlocutory review pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b). Therefore, the trial court deferred further action in the case until the resolution of any appeals from the decisions certified for immediate appeal. Plaintiffs and Defendants both appealed various decisions of the trial court, thereby delaying the entry of money judgments in the trial court.

## Defendants' Appeal

### I.

**[8]** Defendants argue the trial court erred by holding that Defendants waived their argument that Plaintiffs' claims were preempted by federal law. Rule 8(c) of the North Carolina Rules of Civil Procedure provides that in a responsive pleading, a party must affirmatively set forth any of the enumerated affirmative defenses "and any other matter constituting an avoidance or affirmative defense." N.C. Gen. Stat. § 1A-1, Rule 8(c) (2005). Settled case law holds that a failure to set forth matters constituting an avoidance or affirmative defense in the pleadings generally results in a waiver of the defense. *Robinson v. Powell*, 348 N.C. 562, 566, 500 S.E.2d 714, 717 (1998).

In ruling that Defendants had waived their federal preemption defense, the trial court noted that the federal preemption issue raised by Defendants was a choice-of-law preemption issue which could be waived if not timely raised, rather than a subject matter jurisdiction preemption issue, which could not be waived. During oral argument in the present case, Defendants conceded that the issue regarding federal preemption was a choice-of-law preemption issue. In support of its ruling that Defendants waived their federal preemption defense,

the trial court relied on *Collins v. CSX Transportation*, 114 N.C. App. 14, 441 S.E.2d 150, *disc. review denied*, 336 N.C. 603, 447 S.E.2d 388 (1994). However, in *Collins*, because our Court held that federal preemption was inapplicable to that case, our Court did not reach the issue of whether federal preemption was an affirmative defense that could be waived. *See id.* at 21, 441 S.E.2d at 154.

Nevertheless, although there is no case law in North Carolina regarding whether choice-of-law federal preemption is an affirmative defense, we hold that it is. "Although we are not bound by federal case law, we may find their analysis and holdings persuasive." *Shepard*, 172 N.C. App. at 479, 617 S.E.2d at 64. In *Gilchrist v. Jim Slemons Imports, Inc.*, 803 F.2d 1488, 1496-97 (9th Cir. 1986), the Ninth Circuit held that choice-of-law federal preemption may be waived if not timely raised. Moreover, G. Gray Wilson, in his treatise on North Carolina Civil Procedure, states that federal preemption is an affirmative defense which must be pled in a responsive pleading. 2 G. Gray Wilson, *North Carolina Civil Procedure* § 8-6, at 143-44 (1995). In support of this proposition, G. Gray Wilson relies upon *Rehabilitation Institute v. Equitable Life Assur.*, 131 F.R.D. 99, 100-01 (W.D. Pa. 1990), *aff'd*, 937 F.2d 598 (3d Cir. 1991), where the federal district court for the Western District of Pennsylvania held, and the Third Circuit affirmed, that ERISA preemption was an affirmative defense that could be waived. Accordingly, we hold that the issue regarding federal preemption raised by Defendants was an affirmative defense.

We further hold that the trial court did not err by holding that Defendants waived the defense of federal preemption. We recognize that "[u]nder certain circumstances [the North Carolina Supreme] Court has permitted affirmative defenses to be raised for the first time by a motion for summary judgment." *Robinson*, 348 N.C. at 566, 500 S.E.2d at 717. In *Dickens v. Puryear*, 302 N.C. 437, 443, 276 S.E.2d 325, 329 (1981), our Supreme Court held that

> if an affirmative defense required to be raised by a responsive pleading is sought to be raised for the first time in a motion for summary judgment, the motion must ordinarily refer expressly to the affirmative defense relied upon. Only in exceptional circumstances where the party opposing the motion has not been surprised and has had full opportunity to argue and present evidence will movant's failure expressly to refer to the affirmative defense not be a bar to its consideration on summary judgment.

In the present case, not only did Defendants not raise the defense of federal preemption in their answer, Defendants also did not raise federal preemption in their motions for summary judgment. Rather, Defendants raised the defense of federal preemption for the first time in their memorandum in response to Plaintiffs' motion for partial summary judgment, which was filed 31 January 2005, after Defendants filed their motions for summary judgment. Plaintiffs did not have the opportunity to argue and present evidence regarding this issue. We therefore hold the trial court did not err by determining that Defendants waived the defense of federal preemption by raising it at what was "virtually the last minute[.]" We overrule the assignments of error grouped under this argument.

II.

[9] Defendants argue the trial court erred by granting summary judgment for Plaintiffs on their UDTP claims involving loans with terms greater than fifteen years. Defendants argue that the trial court erred by determining that NationsCredit committed a UDTP in connection with the sale of SPCI on loans having terms greater than fifteen years because the sale of similar insurance was permitted in association with such loans. Defendants argue that NationsCredit could have sold insurance similar to that sold to Plaintiffs pursuant to Article 58 of Chapter 58. In a related argument, Defendants argue that under Article 58 of Chapter 58 the Insurance Commissioner has approved forms that are nearly identical to the SPCI sold to Plaintiffs with loans greater than fifteen years.

However, the issues that Defendants attempted to raise in opposition to summary judgment are not issues of material fact. It is undisputed that Defendants purported to sell the SPCI to Plaintiffs pursuant to Article 57 of Chapter 58, not Article 58 of that Chapter. It is also undisputed that the SPCI sold to Plaintiffs having loans greater than fifteen years was not approved by the North Carolina Department of Insurance. N.C. Gen. Stat. § 58-3-150(a) (2005) provides:

It is unlawful for any insurance company licensed and admitted to do business in this State to issue, sell, or dispose of any policy, contract, or certificate, or use applications in connection therewith, until the forms of the same have been submitted to and approved by the Commissioner, and copies filed in the Department.

Moreover, N.C. Gen. Stat. § 58-57-1 (2005) provides that credit insurance under that Article can only be sold with loans having durations of fifteen years or less:

> All credit life insurance, all credit accident and health insurance, all credit property insurance, all credit insurance on credit card balances, all family leave credit insurance, and all credit unemployment insurance written in connection with direct loans, consumer credit installment sale contracts of whatever term permitted by G.S. 25A-33, leases, or other credit transactions shall be subject to the provisions of this Article, except credit insurance written in connection with direct loans of more than 15 years' duration.

Based upon the undisputed facts, we hold the trial court did not err by determining that, by virtue of the sale of unapproved SPCI, Defendants committed a UDTP.

[10] Defendants also argue the sale of SPCI on an unapproved form is a regulatory matter and does not constitute a UDTP. Defendants argue that N.C. Gen. Stat. § 58-2-70 and N.C. Gen. Stat. § 58-3-100 provide for regulatory penalties for violations of the insurance statutes. In contrast, Defendants argue, N.C. Gen. Stat. § 58-63-15 defines unfair and deceptive acts in the insurance industry. However, in *Country Club of Johnston County, Inc.*, our Court held that in order to establish a UDTP, a party need not establish a violation under Article 63 of Chapter 58; a party may also establish that an insurer violated N.C. Gen. Stat. § 75-1.1. *Country Club of Johnston Cty., Inc.*, 150 N.C. App. at 243-45, 563 S.E.2d at 277-78.

Defendants also cite *Home Indemnity Co. v. Hoechst Celanese Corp.*, 128 N.C. App. 226, 494 S.E.2d 768, *disc. review denied*, 505 S.E.2d 869 (1998), arguing that the failure to obtain approval of the Insurance Commissioner does not void an insurance policy but results in regulatory penalties. However, *Home Indemnity Co.* is distinguishable. In *Home Indemnity Co.*, our Court did note that nothing in N.C.G.S. § 58-3-150 declared that unapproved policy provisions were void and further noted that Chapter 58 provided for penalties for violations of its provisions by way of N.C.G.S. § 58-2-70 and N.C.G.S. § 58-3-100. *Id.* at 233, 494 S.E.2d at 773. Our Court also stated that the unapproved policy provision in that case was not contrary to the public policy of North Carolina because it was ultimately approved by the Department of Insurance. *Id.* at 234, 494 S.E.2d at 773. However, our Court also limited its holding as follows: "In hold-

ing that the unapproved form here is not void, we do not address the situation where an unapproved form is never submitted for approval or is subsequently rejected for use by the Department of Insurance." *Id.*

In the present case, the SPCI sold to Plaintiffs in association with loans greater than fifteen years was never submitted to the Department of Insurance for approval. Moreover, it could not have been approved because Article 57 of Chapter 58 does not authorize the sale of such credit insurance on loans with durations greater than fifteen years. *See* N.C.G.S. § 58-57-1. Therefore, we hold that the sale of the SPCI, which could not have been approved by the Department of Insurance, was void as against the public policy of North Carolina.

We also hold that the sale of the SPCI with loans greater than fifteen years was a UDTP as a matter of law. In *Drouillard v. Keister Williams Newspaper Services*, 108 N.C. App. 169, 423 S.E.2d 324 (1992), *disc. review denied*, 333 N.C. 344, 427 S.E.2d 617 (1993), we noted that "[t]his Court has repeatedly held that the violation of regulatory statutes which govern business activities may also be a violation of N.C. Gen. Stat. § 75-1.1 whether or not such activities are listed specifically in the regulatory act as a violation of N.C. Gen. Stat. § 75-1.1." *Id.* at 172-73, 423 S.E.2d at 326-27. In *Drouillard*, our Court relied in part on *Ellis v. Smith-Broadhurst, Inc.*, 48 N.C. App. 180, 183, 268 S.E.2d 271, 273 (1980), where our Court held that the insurance statutes did not provide exclusive regulation for the insurance industry and that N.C.G.S. § 75-1.1 was applicable. *Drouillard*, 108 N.C. App. at 172-73, 423 S.E.2d at 326. In *Drouillard*, we then held that N.C.G.S. § 75-1.1 was applicable to violations of the Trade Secrets Protection Act despite the fact that this Act was not one of the regulatory statutes specifically listed in Chapter 66. *Id.* at 172-73, 423 S.E.2d at 326-27.

In the present case, we hold that the sale of unapproved SPCI to Plaintiffs in association with loans having terms greater than fifteen years was an "unfair or deceptive act[] or practice[] in or affecting commerce[,]" in violation of N.C.G.S. § 75-1.1(a). As established by *Drouillard* and *Ellis*, it is immaterial that the insurance statutes are regulatory statutes.

Defendants also argue that the failure to obtain regulatory approval for the SPCI did not proximately cause any damage to Plaintiffs. Defendants argue that because Plaintiffs retained the insurance product, the sale of SPCI did not cause them to suffer any dam-

ages. However, this argument wrongly supposes that the SPCI sold to Plaintiffs had some value. Because we hold, in section V of this opinion pertaining to Defendants' appeal, that the SPCI sold to Plaintiffs had no value, we reject this argument. Therefore, the sale of SPCI to Plaintiffs with loans greater than fifteen years proximately caused Plaintiffs to suffer damages. We therefore affirm the trial court on this issue.

III.

**[11]** Defendants argue the trial court erred by granting summary judgment to Plaintiffs having loans greater than fifteen years on their good faith and fair dealing claims. Relying upon *Polygenex Int'l, Inc. v. Polyzen, Inc.*, 133 N.C. App. 245, 515 S.E.2d 457 (1999), Defendants argue "[t]he duty of good faith is not an independent duty and a claim for its breach must allege a breach of the contract from which it arises." Defendants contend that because Plaintiffs did not allege breach of contract, the trial court erred by granting summary judgment for Plaintiffs with loans greater than fifteen years on their good faith and fair dealing claims.

However, *Polygenex Int'l, Inc.* does not stand for the proposition that a party alleging breach of the duty of good faith and fair dealing must allege a breach of contract. Rather, in *Polygenex Int'l, Inc.*, the plaintiff filed an action against the defendants for breach of contract, tortious interference with contract, trademark infringement, and unfair and deceptive trade practices. *Id.* at 246, 515 S.E.2d at 459. The defendants moved to dismiss the complaint and also moved for costs and attorneys' fees under Rule 11 of the Rules of Civil Procedure. *Id.* at 247, 515 S.E.2d at 459. The plaintiff voluntarily dismissed the action without prejudice. *Id.* The trial court then entered an order finding that the plaintiff's complaint was "not warranted in law, was not well-grounded in fact, and was filed for an improper purpose." *Id.* The trial court ordered the plaintiff and an officer/director of the plaintiff to pay the defendants' attorneys' fees and costs. *Id.*

On appeal, our Court simply addressed issues related to the sanctioning of the plaintiff and its officer/director. *Id.* at 247-55, 515 S.E.2d at 459-64. In support of their argument that the plaintiff's breach of contract claim was facially implausible, the defendants in *Polygenex Int'l, Inc.* argued that " '[a]bsent a breach of actual provisions of the Separation Agreement, . . . breach of the implied covenant of good faith does not state a proper cause of action.' " *Id.* at 251, 515 S.E.2d at 461. Our Court did not so hold. Our Court simply held that the trial

court's findings of fact were supported by sufficient evidence and that the findings supported the trial court's conclusions. *Id.* at 252, 515 S.E.2d at 462. Our Court held that the plaintiff did not state a claim for breach of contract. *Id.* It appears there was not even a claim for breach of the duty of good faith and fair dealing at issue in that case. Therefore, our Court did not hold that a party must allege breach of contract to state a claim for breach of the duty of good faith and fair dealing.

Our Court has recognized a cause of action for breach of the duty of good faith and fair dealing in a context similar to the one at issue in the present case. In *Gant v. NCNB*, 94 N.C. App. 198, 379 S.E.2d 865, *disc. review denied*, 325 N.C. 706, 388 S.E.2d 453 (1989), the trial court dismissed the plaintiff's complaint which had alleged, *inter alia*, a claim for breach of the duty of good faith. *Id.* at 199-200, 379 S.E.2d at 867. The plaintiff alleged that the defendant failed to inform her of the financial condition of the company whose loans the plaintiff guaranteed. *Id.* at 199, 379 S.E.2d at 867. Specifically, the plaintiff alleged that the defendant knew the plaintiff was unaware of the company's financial condition and that the plaintiff was relying upon the defendant's good faith and expertise. *Id.* at 200, 379 S.E.2d at 867. The plaintiff also alleged the defendant knew that the company, whose loans the plaintiff guaranteed, was insolvent. *Id.*

Our Court recognized that although there is no fiduciary relationship between a creditor and a guarantor, a creditor may have a duty to disclose information about the principal debtor under some circumstances. *Id.* at 199, 379 S.E.2d at 867. Our Court stated:

" 'If the creditor knows, or has good grounds for believing that the surety [or guarantor] is being deceived or misled, or that he is induced to enter into the contract in ignorance of facts materially increasing the risks, of which he has knowledge, and he has an opportunity, before accepting his undertaking, to inform him of such facts, good and fair dealing demand that he should make such disclosure to him; and if he accepts the contract without doing so, the surety [or guarantor] may afterwards avoid it.' "

*Id.* at 199-200, 379 S.E.2d at 867 (quoting *Trust Co. v. Akelaitis*, 25 N.C. App. 522, 526, 214 S.E.2d 281, 284 (1975) (citation omitted)). Our Court held that the plaintiff "alleged sufficient facts to state a claim against [the] defendant, whether the cause of action is ultimately determined to be one for negligence or 'breach of duty of good faith,' as [the] plaintiff has labeled her claims." *Id.* at 200, 379 S.E.2d at 867.

In the present case, as in *Gant*, NationsCredit had a duty to act in good faith and deal fairly with its borrowers to whom it also sold insurance. The undisputed facts demonstrate that NationsCredit sold insurance products that were not approved by the Department of Insurance to Plaintiffs with loans greater than fifteen years. In fact, the insurance sold to Plaintiffs with loans greater than fifteen years could not have been approved by the Department of Insurance. *See* N.C.G.S. § 58-57-1. We hold that by selling an unlawful insurance product to Plaintiffs with loans greater than fifteen years, NationsCredit breached its duty of good faith and fair dealing as a matter of law. Therefore, the trial court did not err by granting summary judgment for certain Plaintiffs on these claims.

## IV.

**[12]** Defendants argue the trial court erred by determining that Plaintiffs with loans greater than fifteen years were entitled to a jury trial regarding punitive damages on their claims for breach of the duty of good faith and fair dealing. Pursuant to N.C. Gen. Stat. § 1D-1 (2005), punitive damages are designed "to punish a defendant for egregiously wrongful acts and to deter the defendant and others from committing similar wrongful acts." Pursuant to N.C. Gen. Stat. § 1D-15(a) (2005), punitive damages may only be awarded against a defendant who is liable for compensatory damages if the claimant also proves fraud, malice or willful or wanton conduct. "Willful or wanton conduct" is defined as "the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm." N.C. Gen. Stat. § 1D-5(7) (2005).

Generally, a party may not recover punitive damages for breach of contract, except for breach of contract to marry. *Newton v. Insurance Co.*, 291 N.C. 105, 111, 229 S.E.2d 297, 301 (1976). "Nevertheless, where there is an identifiable tort even though the tort also constitutes, or accompanies, a breach of contract, the tort itself may give rise to a claim for punitive damages." *Id.* "Even where sufficient facts are alleged to make out an identifiable tort, however, the tortious conduct must be accompanied by or partake of some element of aggravation before punitive damages will be allowed." *Id.* at 112, 229 S.E.2d at 301.

In the present case, Defendants argue the trial court erred because Plaintiffs failed to prove an independent tort and failed to submit sufficient evidence that NationsCredit acted willfully or wan-

tonly. However, in *Dailey v. Integon Ins. Corp.*, 57 N.C. App. 346, 291 S.E.2d 331 (1982), the plaintiff alleged that the defendant insurance company refused to settle his fire claim without justification, and the plaintiff sought compensatory, special, and punitive damages. *Id.* at 347, 291 S.E.2d at 332. The plaintiff alleged the defendant refused to settle the plaintiff's fire claim in good faith and refused to acknowledge the plaintiff's damage estimates. *Id.* at 348, 291 S.E.2d at 332. The plaintiff also alleged that the defendant's agent offered money to local individuals in an attempt to discredit the plaintiff's claim and credibility. *Id.* The plaintiff alleged that these actions breached the covenant of good faith and fair dealing. *Id.* The plaintiff also alleged these actions were willful, oppressive and malicious, and were done to pressure the plaintiff into a settlement. *Id.* at 348-49, 291 S.E.2d at 332-33. The plaintiff further alleged the defendant's misuse of power was outrageous and was in reckless and wanton disregard of the plaintiff's rights. *Id.* at 349, 291 S.E.2d at 333.

The defendant moved to dismiss the plaintiff's claim and the trial court dismissed the plaintiff's claims for special and punitive damages. *Id.* at 347, 291 S.E.2d at 332. Our Court reversed, however, holding that the plaintiff "sufficiently alleged a tortious act accompanied by 'some element of aggravation' to withstand [the] defendant's motion." *Id.* at 350, 291 S.E.2d at 333.

Similarly, in the present case, Plaintiffs with loans greater than fifteen years have proven willful and wanton tortious activity by NationsCredit sufficient to warrant submission of their class claim for punitive damages to a jury. In the present case, the trial court relied on the following facts in holding that Plaintiffs had alleged facts sufficient for a jury determination on punitive damages:

[1.] NationsCredit was a wholly owned subsidiary of a sophisticated nationwide bank;

[2.] NationsCredit had a legal department available to give advice;

[3.] There is no affidavit or deposition testimony from anyone working for or with NationsCredit that [NationsCredit] ever considered whether the sale of this SPCI was legal or conducted an investigation into the legality of its insurance sales practices on these kinds of loans;

[4.] [NationsCredit] has offered no direct evidence that it believed or had a rational basis for believing it was acting legally

when it illegally sold these insurance policies over a two year period from May 1998 through June 2000;

[5.] The lawfulness vs. unlawfulness issue is not a complicated factual question; it is a matter of reading the applicable statutes. Anyone reading the statute, particularly someone in the insurance field, would at the least recognize the problem with selling this insurance, and there is no evidence before the Court that the arguments now made by defense counsel in court in defense of selling this insurance were considered and evaluated before making the decision to sell the insurance;

[6.] The sale and financing of SPCI on mortgage loans has been controversial for a number of years and is highly regulated by the states;

[7.] SPCI is expensive insurance that meets the needs of very few if any customers;

[8.] NationsCredit never investigated offering other kinds of insurance because profits would have been lower; and

[9.] The primary motivation behind the sale of SPCI was the large profits available.

The trial court held that this evidence would allow a jury to infer that NationsCredit

failed to investigate or take any steps to determine whether the sale of this controversial and highly regulated insurance was legal and decided to sell the insurance solely based on the high profits available and without regard to the financial needs or legal rights of its customers, and to the detriment of their property rights in the homes securing these mortgages.

The trial court recognized that there were other facts which could allow inferences to the contrary, but determined that the resolution of the controversy was appropriate for a jury.

We hold that Plaintiffs proved sufficient facts establishing willful or wanton tortious activity by NationsCredit. Plaintiffs proved facts sufficient to show that the actions of NationsCredit were in "conscious and intentional disregard of and indifference to the rights" of Plaintiffs, and NationsCredit knew or should have known that by selling unlawful insurance, its actions were "reasonably likely to result in injury, damage, or other harm." *See* N.C.G.S. § 1D-5(7).

**[13]** Defendants also argue the trial court erred by certifying a class because there were no common questions of law or fact for Plaintiffs' class claim for punitive damages. We review a trial court's decision to certify a class for an abuse of discretion. *Nobles v. First Carolina Communications*, 108 N.C. App. 127, 132, 423 S.E.2d 312, 315 (1992), *disc. review denied*, 333 N.C. 463, 427 S.E.2d 623 (1993).

In *Faulkenberry v. Teachers' and State Employees' Ret. Sys.*, 345 N.C. 683, 483 S.E.2d 422 (1997), the defendants argued that class certification was inappropriate because members of the potential class would receive different recoveries. *Id.* at 698, 483 S.E.2d at 431-32. Our Supreme Court held that these were collateral issues, and that the predominate issue was "how much the parties' retirement benefits were reduced by an unconstitutional change in the law." *Id.* at 698, 483 S.E.2d at 432. Our Supreme Court upheld the trial court's certification of the class. *Id.* at 698-99, 483 S.E.2d at 432.

Likewise, in the present case, the fact that Plaintiffs might be entitled to varying amounts of damages did not preclude class certification. In the present case, the trial court made findings of fact regarding damages:

13. . . . The fact that class members, if Plaintiffs prevail, will be entitled to varied amounts of damages does not render class certification inappropriate. Damages will be simpler to deal with in this case than in some, since it will be clear from review of the loan papers how much the insurance coverage at issue cost each class member and whether the financing of the insurance premium increased other fees or costs.

14. . . . The questions of fact and law at issue are the same for all types of SPCI. Only the amount of damages will vary and that variance is insufficient in the Court's judgment and evaluation to preclude class certification.

We hold the trial court did not abuse its discretion by certifying a class.

V.

**[14]** Defendants argue the trial court erred by failing to reduce the amount of compensatory damages by the value of the SPCI retained by Plaintiffs. N.C.G.S. § 75-16 provides for damages for a violation of the UDTP Act:

If any person shall be injured or the business of any person, firm or corporation shall be broken up, destroyed or injured by reason of any act or thing done by any other person, firm or corporation in violation of the provisions of this Chapter, such person, firm or corporation so injured shall have a right of action on account of such injury done, and if damages are assessed in such case judgment shall be rendered in favor of the plaintiff and against the defendant for treble the amount fixed by the verdict.

"Unfair and deceptive trade practices and unfair competition claims are neither wholly tortious nor wholly contractual in nature and the measure of damages is broader than common law actions." *Sunbelt Rentals, Inc. v. Head & Engquist Equip., L.L.C.*, 174 N.C. App. 49, 61, 620 S.E.2d 222, 231 (2005). "The measure of damages used should further the purpose of awarding damages, which is 'to restore the victim to his original condition, to give back to him that which was lost as far as it may be done by compensation in money.' " *Bernard v. Central Carolina Truck Sales*, 68 N.C. App. 228, 233, 314 S.E.2d 582, 585 (quoting *Phillips v. Chesson*, 231 N.C. 566, 571, 58 S.E.2d 343, 347 (1950)), *disc. review denied*, 311 N.C. 751, 321 S.E.2d 126 (1984).

Defendants argue that the SPCI sold to Plaintiffs had value and that its value must be deducted from Plaintiffs' damages prior to trebling. In support of this argument, Defendants rely upon *Morris v. Bailey*, 86 N.C. App. 378, 386, 358 S.E.2d 120, 125 (1987), where our Court recognized that "[i]f a plaintiff in an action under Section 75-1.1 involving the sale of a good retains the good, the difference in fair market value is an appropriate measure of damages." However, the principle enunciated in *Morris* is inapplicable because Plaintiffs in the present case did not "retain[] [a] good." Rather, Plaintiffs retained an unlawfully sold insurance product which had no value.

Defendants also cite *Pierce v. Reichard*, 163 N.C. App. 294, 593 S.E.2d 787 (2004) and *Lumsden v. Lawing*, 107 N.C. App. 493, 421 S.E.2d 594 (1992). However, in these cases, whatever was retained by the complaining party had value which, when retained by the complaining party, did reduce the amount of damages owed to the complaining party. *See Pierce*, 163 N.C. App. at 298, 593 S.E.2d at 790 (where the defendant's damages were reduced by the fair market rental value of the real property); *Lumsden*, 107 N.C. App. at 504, 421 S.E.2d at 601 (where the plaintiffs' damages were reduced by the reasonable rental value of the real property). Unlike the cases cited by Defendants, the SPCI in the present case had no value because it was an unlawfully sold insurance product. Defendants also cite *Taylor*

*v. Triangle Porsche-Audi, Inc.*, 27 N.C. App. 711, 220 S.E.2d 806 (1975), *disc. review denied*, 289 N.C. 619, 223 S.E.2d 396 (1976). However, *Taylor* is inapposite because the plaintiff in that case sought to rescind the contract and recover the sales price rather than retain the vehicle and recover the difference in value. *Id.* at 716-17, 220 S.E.2d at 811.

Because we hold that the sale of SPCI with loans greater than fifteen years was void as against public policy, we look to case law regarding void contracts in holding that the SPCI sold to Plaintiffs with loans greater than fifteen years had no value. Our Supreme Court has stated: "[I]t is generally held that if there can be no recovery on an express contract because of its repugnance to public policy, there can be no recovery on *quantum meruit*." *Thompson v. Thompson*, 313 N.C. 313, 314-15, 328 S.E.2d 288, 290 (1985) (citing *Builders Supply v. Midyette*, 274 N.C. 264, 162 S.E.2d 507 (1968); *Insulation Co. v. Davidson County*, 243 N.C. 252, 90 S.E.2d 496 (1955)). "Stated differently, the law will not allow one party to benefit directly or indirectly from a contract void as against public policy." *Davis v. Taylor*, 81 N.C. App. 42, 50, 344 S.E.2d 19, 24, *disc. review denied*, 318 N.C. 414, 349 S.E.2d 593 (1986). In the present case, we hold that the SPCI sold to Plaintiffs with loans greater than fifteen years in length did not have any value because the contract was void as against public policy. Therefore, Defendants were not entitled to reduce the amount of damages determined by the trial court by any amount attributable to the unlawful insurance product. Accordingly, to make Plaintiffs whole, the trial court properly held that the measure of damages should include the premium, interest, fees, and points associated with the purchase and financing of the SPCI.

Defendants also argue that pursuant to *Blount v. Fraternal Assn.*, 163 N.C. 167, 79 S.E. 299 (1913), the lack of the Commissioner of Insurance's approval does not affect the validity of the insurance. However, our Court analyzed *Blount* in *Home Indemnity Co.*, discussed above in section II of Defendants' Appeal. In *Home Indemnity Co.*, our Court held that

> the dicta in *Blount* is persuasive. *Blount* interpreted a predecessor statute to G.S. 58-3-150. While the court in *Blount* did rule on a purely evidentiary basis, the court also addressed the issue of unapproved policy language. The court determined that even if the Insurance Commissioner had not approved the policy, "we would not give our assent to the position of the plaintiff that this

would avoid the effect of the provision stamped on the certificate, leaving other parts of the certificate in force." [*Blount*, 163 N.C.] at 170. The court further noted that "[t]he statute does not purport to deal with the validity of the contract of insurance, but with the insurance company." *Id.*

*Home Indemnity Co.*, 128 N.C. App. at 233-34, 494 S.E.2d at 773. In *Home Indemnity Co.*, our Court also held that the policy provision at issue in that case was not contrary to public policy and should be enforced as written. *Id.* at 234, 494 S.E.2d at 773. However, as we discussed earlier, our Court limited its holding as follows: "In holding that the unapproved form here is not void, we do not address the situation where an unapproved form is never submitted for approval or is subsequently rejected for use by the Department of Insurance." *Id.* In the present case, the SPCI sold to Plaintiffs in association with loans greater than fifteen years was never submitted to the Department of Insurance for approval, nor could it have been, as we determined earlier. Therefore, the sale of such insurance was void as against public policy.

[15] Defendants further argue the trial court erred by failing to reduce, prior to trebling, the amount of compensatory damages by the amount of any refund received by Plaintiffs who canceled their coverage. Defendants rely upon *Taylor v. Volvo North America Corp.*, 339 N.C. 238, 451 S.E.2d 618 (1994), where the plaintiff leased a vehicle manufactured by the defendant and filed an action against the defendant alleging the vehicle failed to conform to an express warranty in violation of the New Motor Vehicles Warranties Act (the Warranties Act). *Id.* at 241, 451 S.E.2d at 619. The trial court found that the defendant breached an express warranty and awarded the plaintiff damages in the amount of $4,511.95 plus interest, consisting of the lease payments, the security deposit, and repair costs. *Id.* at 243, 451 S.E.2d at 621. The trial court also found that the defendant had unreasonably refused to comply with the Warranties Act and, therefore, trebled the damages. *Id.* The trial court then allowed the defendant to offset $5,429.00, which represented a reasonable allowance for the use of the vehicle. *Id.*

Our Supreme Court held that the reasonable allowance for the use of a vehicle should have been deducted from the plaintiff's damages before those damages were trebled. *Id.* at 256, 451 S.E.2d at 628. However, our Supreme Court based its decision on the interplay between the "Remedies" and "Replacement or refund" sections of the Warranties Act. *Id.* at 256-59, 451 S.E.2d at 628-30. Importantly, the

Court limited its holding by stating that the Warranties Act was not comparable with Chapter 75 on the issue of offsetting: "We believe the two statutes are not comparable on this issue. The [Warranties] Act before us specifically provides for the damages, i.e. refunds, to a consumer to be reduced by a reasonable allowance for the vehicle's use. Chapter 75 has no such offsetting provisions." *Id.* at 260, 451 S.E.2d at 630. The Court in *Taylor* also distinguished *Seafare Corp. v. Trenor Corp.*, 88 N.C. App. 404, 363 S.E.2d 643, *disc. review denied*, 322 N.C. 113, 367 S.E.2d 917 (1988), which dealt with offsetting in the context of Chapter 75. *Id.* at 260, 451 S.E.2d at 630. We find *Seafare Corp.* persuasive in the present case.

In *Seafare Corp.*, the plaintiff filed an action against the defendants alleging the defendants engaged in unfair and deceptive trade practices in violation of N.C.G.S. § 75-1.1. *Seafare Corp.*, 88 N.C. App. at 406, 363 S.E.2d at 647. The jury returned a verdict awarding the plaintiff $400,000.00 in damages. *Id.* at 408, 363 S.E.2d at 648. In its judgment, the trial court deducted $137,000.00 which had been paid to the plaintiff by two of the original defendants in return for dismissals. *Id.* The trial court then trebled the reduced amount pursuant to N.C.G.S. § 75-16. *Id.*

On appeal, our Court held that the trial court erred by deducting the $137,000.00 before trebling the jury's award of damages, rather than after. *Id.* at 417, 363 S.E.2d at 653. Our Court recognized that N.C. Gen. Stat. § 75-16 "is both remedial and punitive in nature." *Id.* We also recognized that "[t]wo purposes of the statutory provision for treble damages are to facilitate bringing actions where money damages are limited and to increase the incentive for reaching a settlement." *Id.* Therefore, our Court relied on the reasoning of a Texas decision, which "based its holding on the punitive and remedial purposes of the statute and also on the ground that deducting the amount before trebling the award would discourage settlements." *Seafare Corp.*, 88 N.C. App. at 417, 363 S.E.2d at 653. Our Court held that the trial court "erred by deducting the $137,000[.00] before rather than after trebling the jury's award of damages[,]" and the trial court remanded for correction of the judgment. *Id.*

Like *Seafare Corp.*, the present case involves trebling of damages under Chapter 75. Therefore, we find the reasoning of *Seafare Corp.*, rather than *Taylor*, to be persuasive. As in *Seafare Corp.*, the trial court's decision in the present case to deduct any refunds paid to Plaintiffs after trebling the entire amount of damages facilitates the

remedial and punitive purposes of Chapter 75, and also encourages settlement. We therefore affirm the trial court on this issue.

Plaintiffs and Defendants failed to set forth argument pertaining to their remaining assignments of error, and we therefore deem them abandoned. *See* N.C.R. App. P. 28(b)(6).

Affirmed.

Judges BRYANT and STEELMAN concur.